**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDERSON KILL & OLICK, P.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:08-cv-4565 (AKH) (RLE) |
| | ) |
| BRAY & GILLESPIE, INC.; BRAY & GILLESPIE | ) **Electronically Filed** |
| MANAGEMENT, LLC; CHARLES A. BRAY and | ) |
| JOSEPH GILLESPIE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**
**AND IMPROPER VENUE, OR IN THE ALTERNATIVE,**
**MOTION TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND................................................................................................ 2

    I.    Bray & Gillespie Management Sustains Hurricane-Related Property
        Losses In Florida.................................................................................................... 2

    II.    Bray & Gillespie Management Retains Anderson Kill As Outside Counsel
        To Represent It In Insurance Coverage And Construction Disputes. .................... 3

    III.    Messrs. Lueken's And Lane's Relationship And Anderson Kill's Poor
        Performance Are Uncovered.................................................................................. 5

    IV.    Anderson Kill Is Terminated As Bray & Gillespie Management's Outside
        Counsel And Anderson Kill Files This Action. ..................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.    This Court Lacks Personal Jurisdiction Over The Defendants. ............................ 7

        A.    Legal Standard For Personal Jurisdiction ................................................. 7

        B.    Anderson Kill Has Not Satisfied Its Burden Of Establishing That
            New York's Long-Arm Statute Confers Jurisdiction Over
            Defendants. ................................................................................................ 8

            1.    Section 302(a)(1) Does Not Confer Jurisdiction Over
                Defendants Because They Did Not Transact Any Business
                In New York That Bears A Substantial Relationship To
                Anderson Kill's Claims................................................................ 9

                a.    Bray & Gillespie Management Did Not Transact
                    Business In New York By Retaining Anderson Kill. ......... 9

                b.    Obtaining Financing In New York Does Not Bear A
                    Substantial Relationship To Anderson Kill's Claims
                    And Thus Does Not Provide A Basis For Asserting
                    Personal Jurisdiction Over Defendants. ........................... 12

            2.    Section 302(a)(3) Does Not Confer Jurisdiction Over
                Defendants Because The Original Event That Caused
                Anderson Kill's Alleged Injury Occurred Outside Of New
                York. ........................................................................................ 13

C.      Exercising Personal Jurisdiction Over Defendants Would Not
        Comport With Federal Due Process. .................................................... 14

II.     The Southern District Of New York Is Not A Proper Venue. ...................... 17

        A.      Legal Standard For Venue .................................................. 17

        B.      The Southern District Of New York Is Not A Proper Venue
                Because Messrs. Bray And Gillespie Reside In Florida. ........................ 17

        C.      The Southern District Of New York Is Not A Proper Venue
                Because A Substantial Part Of The Events Or Omissions Giving
                Rise To Anderson Kill's Claims Did Not Occur In The Southern
                District Of New York ............................................................. 18

                1.      Contract And Contract-Like Claims (Counts I, IV, and V) .......... 19

                2.      Fraud Claim (Count II) ................................................ 21

                3.      Declaratory Judgment Claim (Count III) .............................. 22

        D.      The Southern District of New York Is Not A Proper Venue Under
                Section 1391(a)(3). ............................................................. 23

III.    Alternatively, The Court Should Transfer This Action To The Middle
        District Of Florida Under 28 U.S.C. § 1404(a) .................................... 23

        A.      Legal Standard For Transfer of Venue ........................................ 24

        B.      The Vast Majority Of The Witnesses Reside Or Work In The
                Middle District Of Florida. .................................................... 24

        C.      Two Of The Non-Party Witnesses Are Outside The Subpoena
                Power Of The Southern District Of New York But Within The
                Subpoena Power Of The Middle District Of Florida. ......................... 25

        D.      Florida Is The Locus Of The Operative Facts. ............................... 26

        E.      Florida Law Governs This Dispute. ........................................... 28

        F.      Anderson Kill's Choice Of Forum ............................................. 30

        G.      The Middle District Of Florida Is A More Efficient Forum For
                Resolving This Case. ........................................................... 30

        H.      The Factors Weigh In Favor Of Transferring This Case To The
                Middle District Of Florida. .................................................... 31

CONCLUSION .................................................................................. 32

**EXHIBITS**

Exhibit A          Declaration of Stephen Nalley

Exhibit B          Declaration of Charles A. Bray

Exhibit C          Declaration of Joseph Gillespie

Exhibit D          Lexington Engagement Letter

Exhibit E          Table C. U.S. District Courts – Civil Cases Commenced,
                   Terminated, and Pending During the 12-Month Periods Ending
                   September 30, 2006 and 2007, available online at:
                   http://www.uscourts.gov/judbus2007/appendices/C00Sep07.pdf

Exhibit F          Table X-1A. U.S. District Courts – Weighted and Unweighted
                   Filings per Authorized Judgeship During the 12-Month Period
                   Ending September 30, 2007, available online at:
                   http://www.uscourts.gov/judbus2007/appendices/X01ASep07.pdf

Exhibit G          Table C-5. U.S. District Courts – Median Time Intervals From
                   Filing to Disposition of Civil Cases Terminated, by District and
                   Method of Disposition, During the 12-Month Period Ending
                   September 30, 2007, available online at:
                   http://www.uscourts.gov/judbus2007/appendices/C05Sep07.pdf

## INTRODUCTION

This case is about attempts by a multi-office, national law firm, Anderson Kill & Olick, P.C. ("Anderson Kill" or "Plaintiff"), to recover unpaid legal fees for shoddy services that it performed in connection with insurance coverage and related construction disputes pending almost entirely in Florida courts on behalf of its former client, Bray & Gillespie Management, LLC ("Bray & Gillespie Management").

This case has only an incidental connection to New York.  Anderson Kill was retained because one of its Philadelphia shareholders specialized in insurance coverage litigation on behalf of policyholders.  Anderson Kill was retained to represent Florida-based entities that had sustained hurricane-related losses to hotels and properties.  Individuals authorized to act on behalf of Bray & Gillespie Management never traveled to New York in connection with the representation or this fee dispute.  Nearly all of the litigation was in Florida courts.  Any failure to pay legal fees occurred in Florida.  All of the Defendants are based in Florida.

Accordingly, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and 28 U.S.C. §§ 1404 and 1406, defendants Bray & Gillespie, Inc.; Bray & Gillespie Management, Charles A. Bray ("Mr. Bray"), and Joseph Gillespie ("Mr. Gillespie") (collectively "Defendants") respectfully request that this Court dismiss this action for lack of personal jurisdiction and improper venue, or in the alternative, transfer the action to the United States District Court, Middle District of Florida, Orlando Division.

As detailed below, this Court lacks personal jurisdiction over the Defendants because:

- Defendants did not transact any business in New York by retaining Anderson Kill;

- Under the situs-of-injury test, Messrs. Bray and Gillespie did not cause an injury in New York by allegedly misrepresenting that Bray & Gillespie Management would pay certain deferred legal fees; and

- Exercising personal jurisdiction over Defendants does not comport with federal due process because the Defendants did not purposefully avail themselves of the benefits and protections of New York.

Even if jurisdiction were proper, this action should be dismissed for a second, independent basis. The Southern District of New York is not a proper venue because:

- Messrs. Bray and Gillespie reside in Florida; and

- A substantial part of the events or omissions giving rise to these claims occurred in Florida and not New York.

Alternatively, if the Court finds that venue lies in the Southern District of New York, this action should be transferred to the Middle District of Florida for the "convenience of the parties and witnesses" and "in the interest of justice" because:

- The vast majority of the witnesses are located in the Middle District of Florida and two of those witnesses are outside of the Southern District of New York's subpoena power;

- The events giving rise to Anderson Kill's claims occurred in Florida;

- Florida law governs this dispute; and

- The Middle District of Florida is a more efficient forum for resolving this case.

## **FACTUAL BACKGROUND**

I.  <u>Bray & Gillespie Management Sustains Hurricane-Related Property Losses In Florida.</u>

Bray & Gillespie Management is a Florida limited liability company based in Daytona Beach, Florida. (Declaration of Stephen Nalley ("Nalley Decl.") ¶¶ 1,2, attached as Exhibit A.) Bray & Gillespie Management is a real estate management company that manages and markets hospitality real estate in Florida and Louisiana through various Bray & Gillespie

Management entities and partnerships that own the properties.[1]  (Nalley Decl. ¶ 2.)  In 2004 and

2005, Bray & Gillespie Management sustained hurricane-related losses to several properties that

it managed.  (Nalley Decl. ¶ 21.)  In connection with these losses, Bray & Gillespie Management

sought to recover under several all-risk commercial property insurance policies.  (Nalley Decl. ¶

20.)  Discussions between Bray & Gillespie Management and the insurers eventually broke

down, and in Spring 2006, Bray & Gillespie Management decided to retain outside counsel to

represent it in its insurance coverage disputes and a related construction dispute with a

remediation and disaster clean-up company selected by one of the insurers.

II.    Bray & Gillespie Management Retains Anderson Kill As Outside Counsel To Represent
       It In Insurance Coverage And Construction Disputes.

       Harold W. Lueken ("Mr. Lueken"), Bray & Gillespie Management's new General

Counsel and Chief Legal Officer, who had just joined Bray & Gillespie Management in April

2006, recommended that Bray & Gillespie Management retain Anderson Kill.  (Nalley Decl. ¶

23; Declaration of Charles A. Bray ("Bray Decl.") ¶ 27, attached as Exhibit B; Declaration of

Joseph Gillespie ("Gillespie Decl.") ¶ 26, attached as Exhibit C.)  Anderson Kill is a multi-

office, national law firm.  Mr. Lueken represented that John N. Ellison ("Mr. Ellison"), a

shareholder in Anderson Kill's Philadelphia office, was a seasoned attorney who specialized in

insurance coverage litigation on behalf of policyholders and had the necessary expertise to

effectively handle the disputes.  (Nalley Decl. ¶ 24; Bray Decl. ¶ 28; Gillespie Decl. ¶ 27.)

Several members of Bray & Gillespie Management's Executive Committee, Charles A. Bray

("Mr. Bray"), Joseph Gillespie ("Mr. Gillespie"), and Stephen Nalley ("Mr. Nalley"),[2] reviewed

---

[1] Only one of the properties is located in Louisiana.

[2] Mr. Bray is the Chairman of Bray & Gillespie Management.  (Bray Decl. ¶ 3.)  Mr. Gillespie is the President of Bray & Gillespie Management.  (Gillespie Decl. ¶ 3.)  Mr. Nalley is the Senior Vice President of Operations of Bray & Gillespie Management.  (Nalley Decl. ¶ 3.)

Mr. Ellison's resume and then decided to retain Anderson Kill because of Mr. Ellison's extensive experience and proven track record and based on their understanding that Mr. Ellison would take the lead on the representation. (Nalley Decl. ¶ 28; Bray Decl. ¶ 32; Gillespie Decl. ¶ 30.) In May 2006, Mr. Lueken and Anderson Kill executed an engagement letter ("Lexington Engagement Letter"). (Nalley Decl. ¶ 33.) Although Anderson Kill represented Bray & Gillespie Management (or Bray & Gillespie Management entities and partnerships) in at least five different matters, no other engagement letters were subsequently executed.[3] (Nally Decl. ¶ 35.) All of this happened in Florida. Messrs. Bray, Gillespie, and Nalley did not travel outside of Florida to retain Anderson Kill. (Bray Decl. ¶ 39; Gillespie Decl. ¶ 37.)

In passing, Mr. Lueken mentioned that Michael J. Lane ("Mr. Lane"), an Anderson Kill attorney based in New York, would be involved but would take a more secondary role and handle some of the administrative tasks such as billing. (Nalley Decl. ¶ 25; Bray Decl. ¶ 29; Gillespie Decl. ¶ 28.) Bray & Gillespie Management thought that it was retaining Mr. Ellison. If it had known that Mr. Lane would eventually assume the more substantive role, Bray & Gillespie Management would not have retained Anderson Kill. (Nalley Decl. ¶ 30; Bray Decl. ¶ 36; Gillespie Decl. ¶ 34.) Beyond Mr. Ellison and Mr. Lane, Anderson Kill did not specifically identify any other attorney that would work on this matter. (Nalley Decl. ¶ 27; Bray Decl. ¶ 31; Gillespie Decl. ¶ 29.) It was irrelevant that Anderson Kill had a New York office. (Nalley Decl. ¶ 29; Bray Decl. ¶ 35; Gillespie Decl. ¶ 33.) Mr. Lueken was not instructed to retain New York counsel. (Nalley Decl. ¶ 29; Bray Decl. ¶ 35; Gillespie Decl. ¶ 33.)

---

[3] In each of these matters Bray & Gillespie Management or a Bray & Gillespie Management entity or partnership was a party to the litigation. (Nalley Decl. ¶ 37.) In all but one matter Bray & Gillespie Management was the named insured under the relevant insurance policy. (Nalley Decl. ¶ 36.) In one instance a Bray & Gillespie Management entity, a Florida limited liability company, was the named insured. (Nalley Decl. ¶ 36.)

Prior to Spring 2006, none of the Defendants had a relationship with Anderson Kill.  (Nalley Decl. ¶ 22; Bray Decl. ¶ 26; Gillespie Decl. ¶ 25.)

III.    Messrs. Lueken's And Lane's Relationship And Anderson Kill's Poor Performance Are Uncovered.

Approximately two years after first retaining Anderson Kill, Bray & Gillespie Management learned that Mr. Lane had provided legal advice to Mr. Lueken while representing Bray & Gillespie Management, including recommending that his compensation be tied to a percentage of the insurance proceeds recovered in connection with the insurance disputes handled by Anderson Kill.  (Nalley Decl. ¶ 45; Bray Decl. ¶ 46; Gillespie Decl. ¶ 44.)  Bray & Gillespie Management has also since learned that contrary to Mr. Lueken's initial representation that he did not know Mr. Lane, they were close friends and had been classmates at Fordham University School of Law.  (Nalley Decl. ¶ 40; Bray Decl. ¶¶ 30, 40; Gillespie Decl. ¶ 38.)

In March 2008, Mr. Lueken resigned as General Counsel.  (Nalley Decl. ¶ 44.) On his way out, Mr. Lueken revealed for the first time that approximately $700,000 of Anderson Kill's invoices had not been paid.  (Nalley Decl. ¶ 43.)  In the Fall of 2007, Anderson Kill had agreed to defer about $300,000 of fees until March 2008.  (Compl. ¶ 23.)

At around this same time, on the eve of trial for the Belfor case, Bray & Gillespie Management learned for the first time that Mr. Lane and Mr. Lueken had acted to minimize Mr. Ellison's involvement and role in the insurance litigation and wrest control over the matters from Mr. Ellison.  (Nalley Decl. ¶ 42; Bray Decl. ¶ 42; Gillespie Decl. ¶ 40.)  Mr. Lueken was not authorized to do this.  (Bray Decl. ¶ 43.)  It also learned that contrary to Mr. Lueken's updates, many of the necessary pre-trial tasks had not been completed.  (Nalley Decl. ¶ 48.)  For example, although trial in the Belfor case was about a month away, Anderson Kill had not deposed key witnesses and had not drafted trial briefs, exhibit lists, witness lists, or any motions in limine.

(Nalley Decl. ¶ 48.)  Bray & Gillespie Management also learned that Mr. Lueken had exceeded the scope of his authority by unilaterally making key, strategic decisions regarding the trial without seeking Mr. Bray's prior approval, such as stipulating to a waiver of all damages claims. (Nalley Decl. ¶ 49.)

IV.    Anderson Kill Is Terminated As Bray & Gillespie Management's Outside Counsel And Anderson Kill Files This Action.

At the end of March 2008, Bray & Gillespie Management terminated Anderson Kill as its outside counsel.  (Nalley Decl. ¶ 50.)  Mr. Ellison, who had left Anderson Kill and joined Reed Smith in February 2008, continued and continues to this day to represent Bray & Gillespie Management in the various disputes.  (Nalley Decl. ¶ 51; Bray Decl. ¶ 45; Gillespie Decl. ¶ 43.)

In March 2008, Anderson Kill forwarded a copy of all of its invoices to Mr. Bray. (Bray Decl. ¶ 47.)  As to be expected, Bray & Gillespie Management began to review Anderson Kill's unpaid invoices, which now topped $1.5 million.  (Nalley Decl. ¶ 46; Bray Decl. ¶ 47.) Prior to March 2008, aside from a few initial invoices that Mr .Bray had reviewed, Messrs. Bray, Gillespie, and Nalley had not reviewed Anderson Kill's invoices.  (Nalley Decl. ¶ 46; Bray Decl. ¶ 47; Gillespie Decl. ¶ 45.)

Just a few days after being terminated as outside counsel, Anderson Kill filed this action in New York Supreme Court seeking to recover its unpaid legal fees.  Anderson Kill named Bray & Gillespie, Inc.; Bray & Gillespie Management, LLC; Charles A. Bray, and Joseph Gillespie as defendants in the five-count Complaint for breach of contract, fraud, declaratory judgment, quantum meruit, and account stated.  This case was subsequently removed to this Court on May 16, 2008.

## ARGUMENT

I.    This Court Lacks Personal Jurisdiction Over The Defendants.

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants have moved to dismiss this action for lack of personal jurisdiction.  As set forth below, exercising jurisdiction over these non-domiciliary Defendants is not authorized by New York's long-arm statute and would violate federal due process.

A.    Legal Standard For Personal Jurisdiction

New York law governs whether this Court has personal jurisdiction over the Defendants.  Patel v. Patel, 497 F. Supp. 2d 419, 423 (E.D.N.Y. 2007) ("Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state.").  And as the plaintiff, Anderson Kill bears the burden of demonstrating that this Court has personal jurisdiction over the Defendants.  Patel, 497 F. Supp. 2d at 423.  To meet its burden, Anderson Kill must demonstrate that (1) New York law confers jurisdiction over the Defendants and (2) exercising jurisdiction over the Defendants comports with federal due process.  Winston & Strawn v. Dong Wong Sec. Co., Ltd., No. 02 Civ. 0183 (RWS), 2002 WL 31444625, at *3 (S.D.N.Y. Nov. 1, 2002).  Even in a case where the parties have not conducted discovery, conclusory allegations are insufficient to support a prima facie showing of personal jurisdiction.  Patel, 497 F. Supp. 2d at 423.  Because Anderson Kill has not demonstrated and cannot demonstrate that New York's long-arm statute confers jurisdiction over the Defendants or that exercising jurisdiction would comport with federal due process, this action should be dismissed for lack of personal jurisdiction.

#9643128 v7

B.    Anderson Kill Has Not Satisfied Its Burden Of Establishing That New York's Long-Arm Statute Confers Jurisdiction Over Defendants.

Anderson Kill alleges that the Court has specific personal jurisdiction over the Defendants under a subsection of New York's long-arm statute, N.Y.C.P.L.R. § 302(a).[4] (Compl. ¶ 10.) This long-arm statute provides that in certain, limited circumstances, a New York court:

> may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y.C.P.L.R. § 302(a).

---

[4] Anderson Kill does not and cannot allege that this Court has general jurisdiction over the Defendants under N.Y.C.P.L.R. § 301. Under this statutory provision, "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y.C.P.L.R. § 301. Under this statute, jurisdiction can be conferred based on a defendant's physical presence, domicile, consent, or corporate presence by "doing business" in New York. Patel, 497 F. Supp. 2d at 424. There is no factual basis for contending that any of the Defendants are present or domiciled in New York or consented to jurisdiction. Moreover, there is no factual or legal basis for alleging that any of the Defendants have "engaged in such a continuous and systematic course of doing business" in New York as to warrant exercising general jurisdiction over them. Patel, 497 F. Supp. 2d at 425 (internal quotation marks omitted) (quoting McGowan v. Smith, 419 N.E.2d 321 (N.Y. 1981)).

Although it is not entirely clear, Anderson Kill must be invoking section 302(a)(1) and section 302(a)(3) as a basis for personal jurisdiction.[5]  (See Compl. ¶¶ 8, 9, 42(b).)  Neither provides a basis for exercising personal jurisdiction over any of the Defendants.

1.    Section 302(a)(1) Does Not Confer Jurisdiction Over Defendants Because They Did Not Transact Any Business In New York That Bears A Substantial Relationship To Anderson Kill's Claims.

Section 302(a)(1) does not provide a basis for exercising jurisdiction over the Defendants.  Jurisdiction is only proper under section 302(a)(1) where: (1) the defendant transacted business in New York and (2) the plaintiff's cause of action arises out of the subject matter of the transacted business.  Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006).  "A cause of action 'arises from' a defendant's New York contacts if the contacts are 'substantially proximate to the allegedly unlawful acts.'"  Beatie & Osborn LLP, 431 F. Supp. 2d at 387 (quoting Xedit Corp. v. Harvel Indus. Corp., 456 F. Supp. 725, 729 (S.D.N.Y. 1978)).  In other words, the business transacted in New York must "bear a substantial relationship to the transaction out of which the instant cause of action arises."  Beatie & Osborn LLP, 431 F. Supp. 2d at 387, 388 (quoting McGowan, 419 N.E.2d at 323).

a.    Bray & Gillespie Management Did Not Transact Business In New York By Retaining Anderson Kill.

Anderson Kill may argue that Bray & Gillespie Management transacted business in New York by retaining a law firm whose head office is in New York.  Although in certain, limited circumstances personal jurisdiction has been asserted over a non-domiciliary client who

---

[5] Sections 302(a)(2) and 302(a)(4) do not apply here.  Section 302(a)(2) requires that the defendant be present in New York while committing the tort.  Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 982, 983 (S.D.N.Y. 1992) ("The courts have interpreted this provision [§ 302(a)(2)] to require that the defendant be physically present within the state while committing the tort.").  None of the Defendants were present in New York while committing the acts that led to this lawsuit.  (See Bray Decl. ¶ 39; Gillespie Decl. ¶ 37.)  Moreover, section 302(a)(4) does not apply because none of the Defendants own, use or possess any real property in New York.  (Nalley Decl. ¶ 16(a)-(b); Bray Decl. ¶¶ 9-12; Gillespie Decl. ¶¶ 9-12.)

intentionally retained *and* sustained an ongoing attorney-client relationship with New York

counsel, the mere acts of contacting the New York office of a multi-office, national law firm,

retaining that firm to perform legal services outside of New York, and submitting payment to

that firm's New York office are insufficient to establish personal jurisdiction over a non-

domiciliary client. Compare Fischbarg v. Doucet, 880 N.E.2d 22, 30 (N.Y. 2007),[6] with

Winston & Strawn, 2002 WL 31444625, at *4.

   Rather, a court should consider the nature of the legal services sought and whether

the client required or benefitted from a New York office or a New York attorney. See Amins v.

Life Support Medical Equip. Corp., 373 F. Supp. 654, 656, 658 (E.D.N.Y. 1974) (holding that

court lacked personal jurisdiction over a Massachusetts corporation that retained a New York

patent attorney in connection with negotiations with a Minnesota company involving federal

patent law and the Washington, D.C. Patent Office because, among other reasons, "[a]n office in

New York was not needed; plaintiff's services could have been rendered as well, it [*sic*] not

more conveniently, from Massachusetts or another nearby State"); see also Beatie & Osborn

LLP, 431 F. Supp. 2d at 388 (holding that the court lacked personal jurisdiction over a California

company's chief executive officer in connection with a fee dispute with a New York law firm

---

  [6] Anderson Kill may cite to Fischbarg to support its arguments. Fischbarg is inapposite for at least two reasons. First, Bray & Gillespie Management did not retain a New York attorney to perform legal services in New York. In Fischbarg, the client retained a New York attorney, Mr. Fischbarg, and continued the relationship with Mr. Fischbarg and only Mr. Fischbarg. 880 N.E.2d at 24, 25, 27. Mr. Fischbarg worked out of a New York office. 880 N.E.2d at 24. And it was Mr. Fischbarg who performed the legal services. 880 N.E.2d at 24, 25. There are no facts suggesting that Mr. Fischbarg was an attorney in a multi-office, national law firm and it appears that he was a solo practitioner. In stark contrast, Bray & Gillespie Management retained a multi-office, national law firm, Anderson Kill. It did so with the understanding that a seasoned shareholder from Anderson Kill's Philadelphia office specializing in insurance coverage disputes would take the lead in the representation. Thus, unlike Fischbarg, Bray & Gillespie Management did not intend to seek out or establish an on-going relationship with a New York attorney. The relationship was with a law firm and if it were tied to any one individual attorney within that firm, that attorney was based in Philadelphia. Second, Mr. Lueken's unauthorized and unilateral acts of minimizing Mr. Ellison's role and involvement and shifting the representation to his law school classmate, Mr. Lane, who just happened to be based in New York, cannot be attributed to Bray & Gillespie Management. In performing those acts, Mr. Lueken was not acting as Bray & Gillespie Management's agent.

where "the clear majority of the performance under the Retainer Agreement occurred in California" courts).

Here, Harold W. Lueken, Bray & Gillespie Management's General Counsel, contacted a Fordham University School of Law classmate, Michael J. Lane, an attorney based in Anderson Kill's New York office. (Nalley Decl. ¶ 40.) Anderson Kill held itself out as a multi-office law firm with a national and international practice and represented that a shareholder in its Philadelphia office, John N. Ellison, specialized in insurance coverage litigation on behalf of policyholders. (Nalley Decl. ¶ 24.) Based on Mr. Ellison's expertise, Bray & Gillespie Management retained Anderson Kill to perform legal services in connection with a Florida-based insurance dispute.[7] (Nalley Decl. ¶ 28.) Although Mr. Lane was to have a secondary role, it was Messrs. Bray's, Gillespie's, and Nalley's understanding that Mr. Ellison would take the lead and responsibility for the substantive aspects of the representation. (Nalley Decl. ¶ 28; Bray Decl. ¶ 32; Gillespie Decl. ¶ 30.) If they had known that Mr. Lane would take the lead in the substantive representation they would not have agreed to retain Anderson Kill. (Nalley Decl. ¶ 30; Bray Decl. ¶ 36; Gillespie Decl. ¶ 34.) And to further underscore the central nature of Mr. Ellison's role, Mr. Ellison continued to represent Bray & Gillespie Management even *after* he left Anderson Kill and joined Reed Smith and *after* Anderson Kill was terminated as outside counsel. (Nalley Decl. ¶ 51; Bray Decl. ¶ 45; Gillespie Decl. ¶ 43.)

---

[7] Mr. Lueken is no longer employed by and is adverse to Bray & Gillespie Management. Although he resigned, he has threatened to sue Bray & Gillespie Management for wrongful termination. The Defendants do not know if Mr. Lueken and Anderson Kill negotiated the Lexington Engagement Letter. But even if they had, those negotiations likely occurred remotely through telephone, fax and email, and are insufficient contacts for purposes of exercising personal jurisdiction. Worldwide Futgol Assocs., Inc. v. Event Entm't, Inc., 983 F. Supp. 173, 177 (E.D.N.Y. 1997) ("New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state.").

Furthermore, there was nothing about the dispute that required or benefitted from a New York office or a New York attorney.  The dispute involved Florida entities and predominantly Florida-based property loss.  (Nalley Decl. ¶¶ 2, 31, 38.)  Messrs. Bray and Gillespie never traveled to New York for the purpose of any of the insurance coverage disputes.  (Bray Decl. ¶ 39; Gillespie Decl. ¶ 37.)  And it was Bray & Gillespie Management's understanding that the attorneys, not the client, would travel to handle these Florida-based disputes and would litigate these matters in Florida courts.  (Nalley Decl. ¶ 31; Bray Decl. ¶ 38; Gillespie Decl. ¶ 36.)  Under these circumstances, Bray & Gillespie Management can hardly be characterized as "transacting" business in New York.

> **b.**    **Obtaining Financing In New York Does Not Bear A Substantial Relationship To Anderson Kill's Claims And Thus Does Not Provide A Basis For Asserting Personal Jurisdiction Over Defendants.**

The only other possible contact with New York is that on occasion, Messrs. Bray and Gillespie have traveled to New York to obtain financing for property acquisitions.[8] However, personal jurisdiction cannot be conferred on the basis of such acts, because this case does not arise from the procurement of that financing.  There is no substantial relationship between the financing of acquisitions and the retention of Anderson Kill or Anderson Kill's claims in this case.  Thus, these acts cannot provide a basis for asserting personal jurisdiction over any of the Defendants.  Beatie & Osborn LLP, 431 F. Supp. 2d at 387 (jurisdiction under section 302(a)(1) is not proper unless the business transacted by the defendant in New York

---

[8] It is widely-recognized that raising financing in New York is not enough to subject a company to general personal jurisdiction.  IP Co. LLC v. Gen. Commc'n, Inc., No. 07 Civ. 2372 (CLB), 2007 WL 3254387, at *3 (S.D.N.Y. Oct. 31, 2007) ("Raising financing is not a form of doing business for the purpose of § 301; if it were, then almost every company in the country would be subject to New York's jurisdiction.") (internal quotation marks omitted) (quoting Clark v. Fonix Corp., No. 98 Civ. 6116, 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999)).

"bear[s] a substantial relationship" to the transaction out of which the plaintiff's cause of action arises).

    2.    Section 302(a)(3) Does Not Confer Jurisdiction Over Defendants Because The Original Event That Caused Anderson Kill's Alleged Injury Occurred Outside Of New York.

Section 302(a)(3) does not provide a basis for exercising jurisdiction over the Defendants, because they did not cause "injury to person or property within the state." N.Y.C.P.L.R. § 302(a)(3). To determine if an injury occurred in New York such that jurisdiction should be conferred under this subsection, courts apply a situs-of-injury test that is based on "the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001) (internal quotation marks omitted) (quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990)). In other words, the mere "occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York" is an insufficient basis for personal jurisdiction under section 302(a)(3). Whitaker, 261 F.3d at 209 (internal quotation marks omitted) (quoting United Bank of Kuwait v. James M. Bridges, Ltd., 766 F. Supp. 113, 116 (S.D.N.Y. 1991)).

The Second Circuit has held that in a fee dispute case where an Indiana client failed to pay legal fees to a New York lawyer and the tortious conduct occurred outside of New York, section 302(a)(3) does not authorize a New York court to assert personal jurisdiction over the alleged tortfeasor. Whitaker, 261 F.3d at 199, 209 (finding that New York lawyer's allegation that out-of-state defendant conspired to deprive him of legal fees does not allege a New York injury sufficient to authorize jurisdiction under section 302(a)(3), because the "relevant, original event which caused the alleged injury was 'either the structuring of the partnership sale to avoid payment [to Whitaker] or the actual withholding of payment to Whitaker, both of which occurred outside New York'") (brackets in original).

-13-

Here, Anderson Kill has, at most, alleged that Messrs. Bray and Gillespie "decided not to pay AKO's invoices and instructed B&G's in-house counsel to request an extension of time, under the pretext that the deferred payment would be made" and "had no intention of honoring their commitment." (Compl. ¶ 42(b).) Thus, like <u>Whitaker</u>, the "original event" that caused the alleged injury was either Messr. Bray's and Gillespie's alleged misrepresentation that they would pay the deferred amount or the withholding of payment to Anderson Kill, both of which occurred in Florida. As such, section 302(a)(3) does not provide a basis for exercising jurisdiction over Messrs. Bray and Gillespie.

C.     Exercising Personal Jurisdiction Over Defendants Would Not Comport With Federal Due Process.

Because New York law does not confer personal jurisdiction over Defendants, it is unnecessary to consider whether exercising jurisdiction would comport with federal due process. Nonetheless, dismissal for lack of personal jurisdiction is also mandated under this standard. Federal due process requires that a non-resident defendant have "certain minimum contacts" with New York "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). In a case such as this, where specific jurisdiction is at issue, minimum contacts only exist where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State," <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958), and could "reasonably anticipate being haled into court there," <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

Here, the Defendants did not purposefully avail themselves of New York by retaining Anderson Kill, a multi-office, national law firm. In a similar case, a non-resident client retained Winston & Strawn ("Winston") in connection with California litigation by contacting a

-14-

partner in Winston's New York office. <u>Winston & Strawn</u>, 2002 WL 31444625, at *1. The client contacted Winston's New York office because of its familiarity with a New York partner and not because it needed a New York lawyer or law firm to perform legal work in New York. <u>Id.</u> at *4. The New York partner was the billing and relationship partner and payment was submitted to Winston's New York office, but most of the substantive legal work was performed by Winston attorneys outside of New York. <u>Id.</u> at *2. Based on these facts, the court distinguished the case from "most of the cases involving the conferring of jurisdiction over an out-of-state client who retains a New York lawyer" and noted that the client's contacts with New York were "more arbitrary than purposeful." <u>Id.</u> at *4.

Likewise, as previously discussed at length, Mr. Lueken only contacted Anderson Kill's New York office because of his prior relationship with Mr. Lane. (Nalley Decl. ¶ 40.) If Mr. Lane had been based in another Anderson Kill office, Mr. Lueken would have presumably contacted him there. Moreover, Bray & Gillespie Management's decision to retain Anderson Kill was based not on Mr. Lane or his office in New York, but on Mr. Ellison's expertise in insurance coverage litigation. (Nalley Decl. ¶ 28; Bray Decl. ¶¶ 28, 32; Gillespie Decl. ¶¶ 27, 30, 33.) Mr. Ellison was not based in New York. (Nalley Decl. ¶ 24.) The dispute involved Florida entities and, except for one Louisiana property, Florida-based property loss. (Nalley Decl. ¶ 38.) Furthermore, neither a New York office nor a New York lawyer versed in New York law conferred any real benefit to the client.

Although some of the legal services were performed in New York, they could have been performed anywhere, and in fact, much of the work was performed by Anderson Kill attorneys based outside of New York. (Nalley Decl. ¶ 54.) The fact that Anderson Kill decided to staff the matter with New York-based attorneys was not discussed with Bray & Gillespie

-15-

Management at the time Anderson Kill was retained, (Nalley Decl. ¶ 27; Bray Decl. ¶ 31; Gillespie Decl. ¶ 29), nor was it an act that can be attributed to the Defendants for purposes of assessing *their* contacts with New York. See Harr v. Armendaris Corp., 294 N.E.2d 855 (N.Y. 1973), rev'g and adopting dissention opinion 337 N.Y.S.2d 285, 288 (N.Y. App. Div. 1972) (a plaintiff may not rely on his own independent activities as the basis for asserting jurisdiction over a defendant). And to the extent that extensive legal services were performed in New York by Mr. Lane, or under his supervision, this was contrary to what Bray & Gillespie Management had agreed. (Nalley Decl. ¶ 30; Bray Decl. ¶ 43; Gillespie Decl. ¶ 41.) Other legal services, such as court appearances, document collections, and certain depositions and witness interviews, could only occur in Florida.

Under such circumstances, there is nothing about Anderson Kill's services which warrant a finding that Defendants purposefully availed themselves of the protections of New York law by retaining a multi-office, national law firm to represent Florida entities in connection with Florida-based insurance and construction disputes. See Amins, 373 F. Supp. at 656, 658 (holding that the court lacked personal jurisdiction over a Massachusetts client in a fee dispute case with a New York patent attorney where the legal services involved federal patent law and the Washington, D.C. Patent Office, and a New York office "was not needed; plaintiff's services could have been rendered as well, it [*sic*] not more conveniently, from Massachusetts or another nearby State"); see also Beatie & Osborn LLP, 431 F. Supp. 2d at 388. Therefore, exercising personal jurisdiction over the Defendants in this case would violate federal due process.

In sum, Defendants respectfully request that this Court dismiss this action for lack of personal jurisdiction over all Defendants.

II.    The Southern District Of New York Is Not A Proper Venue.

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C.§ 1406(a),

Defendants have moved to dismiss this case because the Southern District of New York is an

improper venue.

A.    Legal Standard For Venue

Plaintiff Anderson Kill bears the burden of proving that venue is proper in this

district as to each of its claims. Insight Data Corp. v. First Bank Sys., Inc., No. 97 CIV. 4896

(MBM), 1998 WL 146689, at *2 (S.D.N.Y. Mar. 25, 1998). In an action based on diversity

jurisdiction, venue is only proper in:

> (1) a judicial district where any defendant resides, if all defendants
> reside in the same State, (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the
> action is situated, or (3) a judicial district in which any defendant is
> subject to personal jurisdiction at the time the action is
> commenced, if there is no district in which the action may
> otherwise be brought.

28 U.S.C. § 1391(a). This venue statute was enacted "to protect defendants from being forced to

litigate in unfair or inconvenient places." Insight Data Corp., 1998 WL 146689, at *2. As set

forth below, none of the three statutory grounds for venue permit Anderson Kill to pursue this

action in the Southern District of New York. Accordingly, this case should be dismissed for

improper venue.

B.    The Southern District Of New York Is Not A Proper Venue Because Messrs. Bray
And Gillespie Reside In Florida.

Section 1391(a)(1) does not provide a basis for venue in this district. Anderson

Kill alleged in its Complaint, which was filed in state court before the Defendants removed the

action to this Court, that venue is proper because *it* resides in the County of New York. (Compl.

¶ 11.) Unlike the New York state statute, N.Y.C.P.L.R. 503(a), which provides that venue is

proper "in the county in which one of the parties resided when it was commenced," the federal venue statute is tied to the defendants' residence. Under the federal statute, venue is proper in a "district where any *defendant* resides, if all *defendants* reside in the same State." 28 U.S.C. § 1391(a)(1) (emphasis added). In this case, all four Defendants reside in Florida, not New York. (Nalley Decl. ¶¶ 2, 9; Bray Decl. ¶¶ 1,2; Gillespie Decl. ¶¶ 1,2.) Even Anderson Kill alleges that two of the four defendants, Messrs. Bray and Gillespie, reside in Volusia County, Florida. (Compl. ¶¶ 7, 8.) Thus, the Southern District of New York is not a proper venue under section 1391(a)(1).

C.    The Southern District Of New York Is Not A Proper Venue Because A Substantial Part Of The Events Or Omissions Giving Rise To Anderson Kill's Claims Did Not Occur In The Southern District Of New York.

Section 1391(a)(2) does not provide a basis for venue in this district, because a "substantial part of the events or omissions giving rise to the" claims occurred in Florida, not New York.

Although venue may be proper in multiple judicial districts, the Second Circuit has cautioned courts to take the adjective "substantial" seriously and to construe the venue statute strictly. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005). In light of the Second Circuit's admonition, it is clear that "*significant* events or omissions *material* to the plaintiff's claim must have occurred" in the Southern District of New York for venue to be proper in this district. Id. (emphasis in original). This involves a two-part inquiry: (1) identifying the nature of the claims and the acts or omissions that gave rise to those claims and (2) determining whether significant acts or omissions material to those claims occurred in the

district. Daniel v. Am. Bd. of Emergency Medicine, 428 F.3d 408, 432 (2d Cir. 2005).[9] This is a qualitative rather than a quantitative determination that is based on "assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Id. at 432, 433. Also, because "the purpose of statutorily defined venue is to protect the *defendant*" from litigating in an unfair or inconvenient forum, some courts have suggested that this analysis focus on the defendant's relevant activities, not the plaintiff's. See Daniel, 428 F.3d at 432, 434 (emphasis in original) (citing Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995), and holding that venue was improper in the Western District of New York because the "vast majority" of defendants' acts, which plaintiffs contend support their antitrust claims, occurred outside of New York).

Here, Anderson Kill has brought three types of claims: (1) contract or contract-like claims (Count I – Breach of Contract, Count IV – Quantum Meruit, and Count V – Account Stated), (2) a fraud claim (Count II – Fraud), and (3) a declaratory judgment claim that seeks to pierce Bray & Gillespie, Inc.'s and Bray & Gillespie Management's (collectively "the Bray & Gillespie Entities") corporate veil (Count III – Declaratory Judgment). Because the significant events or omissions that are material or that gave rise to all of the claims occurred in Florida and not New York, this district is not a proper venue.

1.    Contract And Contract-Like Claims (Counts I, IV, and V)

The thrust of Counts I (Breach of Contract), IV (Quantum Meruit) and V (Account Stated) is that the Defendants failed to pay legal fees that they owed to Anderson Kill. (Compl. ¶¶ 32, 55, 61.) This alleged failure occurred in Florida. Moreover, Anderson Kill's

---

[9] Although the discussion in Daniel related to 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1391(a)(2) contains identical language and the two-part test in Daniel has subsequently been applied to a § 1391(a)(2) venue analysis. See, e.g., Florczak v. Staffieri, No. 3:06-CV-0064, 2006 WL 1085173, at *4 (N.D.N.Y. April 25, 2006).

legal services were performed in connection with litigation that was predominantly in Florida courts on behalf of Florida entities. (Nalley Decl. ¶¶ 31, 38; Bray Decl. ¶ 38.) Thus, because at their core, Anderson Kill's contract-based claims are grounded in omissions and acts that occurred outside of New York, New York is not a proper venue. Daniel, 428 F.3d at 435 (noting that venue would be proper in the district where the defendant was headquartered and where the "crux of the [defendant's] charged antitrust scheme" occurred).

As to Count I for breach of contract, the relevant events and omissions occurred in Florida. In evaluating a contract claim, courts generally consider where the contract was negotiated or executed, where it was to be performed, and where it was allegedly breached. Gulf Ins. Co., 417 F.3d at 357. The only possible contract at issue in this case is the Lexington Engagement Letter. The letter was presumably a form agreement that the parties neither discussed nor negotiated. Although it was signed for Anderson Kill by an attorney based in New York, the contract was formed when Mr. Lueken agreed to its terms by countersigning it in Florida. (See Exhibit D to Nalley Decl.) The legal services were performed in connection with litigation that was predominantly based in Florida courts. (Nalley Decl. ¶¶ 31, 38; Bray Decl. ¶ 38.) Furthermore, the alleged breach (i.e., Defendants' failure to pay legal fees) occurred in Florida where Bray & Gillespie Management, the only entity that is potentially responsible for those legal fees, is based.

Similarly, as to Count IV for quantum meruit, Anderson Kill's legal services were performed in connection with cases pending in Florida courts and any benefit from those legal services was conferred in Florida upon Florida insureds. (Nalley Decl. ¶¶ 31, 38; Bray Decl. ¶ 38.)

Lastly, based on Anderson Kill's own allegations, the significant events or omissions material to Count V (account stated) occurred in Florida. The monthly invoices for the legal services were sent to Mr. Lueken in Florida. (See Compl. ¶ 59.) The invoices were allegedly reviewed in Florida. (See Compl. ¶ 60.) Any failure to contest those invoices or implied promise to pay the invoices occurred in Florida. (See Compl. ¶ 62.) And any request to defer payment and alleged promise to pay the deferred amounts occurred in Florida. (See Compl. ¶ 63.)

Thus, the significant events or omissions material to the contract-based claims occurred outside of this district, and the Southern District of New York is not a proper venue. See Daniel, 428 F.3d at 434 (holding that venue was improper in the Western District of New York because the "vast majority" of defendants' acts, which plaintiffs contend support their antitrust claims, occurred outside of New York); Florczak, 2006 WL 1085173, at *1, *3, *4 (finding that although defendants may have sent communications to plaintiff in New York, venue was improper in New York under § 1391(a)(2) where lawsuit arose out of defendant's alleged breach of contract, the contract was for the provision of services in Connecticut, and the breach was based on defendant's actions and/or omissions in Connecticut, including the failure to honor the contract and pay plaintiff); Insight Data Corp., 1998 WL 146689, at *3 (finding that New York was improper venue for breach of contract claim because if defendant breached the non-disclosure or non-competition provisions of his employment agreement, the breach occurred in Minneapolis).

### 2.    Fraud Claim (Count II)

Although Defendants dispute that the fraud claim is distinct from the contract claim or that it may be pursued simultaneously with the contract claim, it is at most based on the allegation that Bray & Gillespie Management misrepresented that it would pay certain deferred

legal fees in full. (Compl. ¶¶ 35, 41, 42(b).) This alleged misrepresentation occurred in Florida, and thus venue is not proper in this district. PI, Inc. v. Ogle, 932 F. Supp. 80, 85 (S.D.N.Y. 1996) (finding that venue would not be proper in the Middle District of Florida because the fraud claim concerned statements that the defendant allegedly made in New York and none of the fraudulent conduct occurred in Florida); Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 927 F. Supp. 731, 736 (S.D.N.Y. 1996) (finding that venue was improper as to the fraud claim because plaintiffs "allege no conduct forming the basis of any of these claims that took place in New York" and any fraud "which defendants may have committed against plaintiffs would have been committed in Pennsylvania or Delaware where defendants reside[d]" and worked).

3.    Declaratory Judgment Claim (Count III)

Although stylized as a claim for "declaratory judgment," Count III seeks a declaration that Messrs. Bray and Gillespie are personally liable for the relief sought in this action. It thus seeks to pierce the Bray & Gillespie Entities' corporate veil. This liability-imposing theory does not create "a separate cause of action . . . independent from the claims asserted against the corporation." Novomoskovsk Joint Stock Co. v. Revson, No. 95 Civ. 5399 JSR, 1998 WL 651076, at *6 (S.D.N.Y. Sept. 23, 1998) (internal quotation marks and citation omitted); accord Carruthers v. Flaum, 365 F. Supp. 2d 448, 474 (S.D.N.Y. 2005) ("New York law does not recognize a separate cause of action to pierce the corporate veil."). Rather, it is a "theory by which a corporation's otherwise existing liability may be imposed on its individual owners." Revson, 1998 WL 651076, at *6. As such, as discussed above, because New York is

an improper venue as to Counts I, II, IV, and V, New York is similarly an improper venue as to this count.[10]

      D.    **The Southern District of New York Is Not A Proper Venue Under Section 1391(a)(3).**

      Section 1391(a)(3) does not apply here. This fallback provision only applies if venue cannot be established in any other district. Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996) ("The phrase 'if there is no district in which the action may otherwise be brought' indicates that venue may be based on § 1391(a)(3) 'only if neither § 1391(a)(1) or (2) can be satisfied.'") (internal brackets omitted) (quoting 1A Moore's Federal Practice ¶ 0.342[3]). But because all Defendants reside in Volusia County, Florida, (see Compl. ¶¶ 3, 4, 6, 7), venue is proper in the Middle District of Florida. 28 U.S.C. § 89(b) (providing that the Middle District of Florida includes Volusia County). Accordingly, the fallback provision does not apply and is not a basis for venue in the Southern District of New York.

**III.    Alternatively, The Court Should Transfer This Action To The Middle District Of Florida Under 28 U.S.C. § 1404(a).**

      Although Defendants dispute that venue is proper in the Southern District of New York, they request, in the alternative, that pursuant to 28 U.S.C. § 1404(a) the Court transfer the action to the Middle District of Florida, Orlando Division.[11]

---

[10] Even if Count III were a separate cause of action, it is clear from Anderson Kill's own Complaint that the significant events or omissions that are material to this count (e.g., the alleged undercapitalization of the Bray & Gillespie Entities and lack of corporate and organizational formalities and discretion) occurred in Florida. (See Compl. ¶ 47.)

[11] The Middle District of Florida is a proper venue under 28 U.S.C. § 1391(a)(1) because all of the defendants reside in Volusia County, Florida, which is in the Middle District of Florida, Orlando Division. 28 U.S.C. § 89(b).

#9643128 v7

A.    <u>Legal Standard For Transfer of Venue</u>

A district court may transfer a case "to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The statute is meant "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." <u>Beatie & Osborn LLP</u>, 431 F. Supp. 2d at 394 (internal quotation marks omitted) (quoting <u>Generale Bank, New York Branch v. Wassel</u>, 779 F. Supp. 310, 313 (S.D.N.Y. 1991)).

To determine whether to transfer a case, courts weigh the following factors: (1) the convenience of the witnesses, (2) the location of the relevant documents and relative ease of access to sources of proof, (3) convenience of the parties, (4) locus of the operative facts, (5) availability of process to compel attendance of unwilling witnesses, (6) relative means of the parties, (7) forum's familiarity with the governing law, (8) the weight accorded a plaintiff's choice of forum, and (9) trial efficiency and the interest of justice based on the totality of the circumstances. <u>Beatie & Osborn LLP</u>, 431 F. Supp. 2d at 395. There is no rigid formula for weighing these factors and no single factor is determinative. <u>Id.</u>

As set forth below, the balance of the factors favor transferring the case to Florida. The Defendants therefore request that if the Court does not dismiss this action, it be transferred to the Middle District of Florida.[12]

B.    <u>The Vast Majority Of The Witnesses Reside Or Work In The Middle District Of Florida.</u>

Courts have routinely noted that the convenience of the forum for witnesses, especially non-party witnesses, is "the single most important factor in the analysis of whether a

---

[12] Because some of the factors (convenience of the parties, relative means of the parties, and location of relevant documents and proof) are likely venue-neutral, they are omitted from this analysis.

transfer should be granted." G. Angel Ltd. v. Camper & Nicholsons USA, Inc., No. 06 Civ. 3495 (PKL), 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008) (internal quotation marks omitted) (quoting Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 516 (S.D.N.Y. 2004)).

Five of the seven key witnesses, two of whom are non-party witnesses, reside or work within the Middle District of Florida. (Nalley Decl. ¶¶ 55, 56.) The three party witnesses include Charles A. Bray, Joseph Gillespie, and Stephen Nalley. (Nalley Decl. ¶ 55.) The two non-party witnesses include Harold W. Lueken and Karen C. Dyer. (Nalley Decl. ¶ 56.) As set forth in Mr. Nalley's Declaration, all of these witnesses have knowledge and information relevant to this action and all reside or work within the Middle District of Florida. (Nalley Decl. ¶¶ 55, 56.) Thus, this factor favors transferring the case to the Middle District of Florida. G. Angel Ltd., 2008 WL 351660, at *5 (finding that this factor favored transfer to Florida where the bulk of the witnesses resided in Florida).

C.     Two Of The Non-Party Witnesses Are Outside The Subpoena Power Of The Southern District Of New York But Within The Subpoena Power Of The Middle District Of Florida.

"The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." G. Angel Ltd., 2008 WL 351660, at *5 (internal quotation marks omitted) (quoting Arrow Elecs., Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989)). If the case were to proceed to trial in the Southern District of New York, two non-party witnesses, Mr. Lueken and Ms. Dyer, would be outside of this Court's subpoena power. See Fed. R. Civ. P. 45(b)(2). Mr. Lueken resides in Daytona Beach, Florida. (Nalley Decl. ¶ 55(c).) Ms. Dyer works in Orlando, Florida. (Nalley Decl. ¶ 56(c).) Accordingly, both of these individuals are beyond the Southern District of New York's subpoena power but within the Middle District of Florida's subpoena power. See Fed. R. Civ. P. 45(b)(2); 28 U.S.C. § 89(b)

-25-

(Middle District of Florida contains Volusia and Orange Counties).[13]  As the former Bray &
Gillespie Management General Counsel involved in retaining and supervising Anderson Kill,
Mr. Lueken is a critical witness to this case.  (Nalley Decl. ¶ 55(c).)  Following his resignation,
Mr. Lueken has threatened to sue for wrongful termination and thus it is unclear if he would
voluntarily travel to New York to testify for this case.

        As such, this factor favors transferring the case to the Middle District of Florida,
especially because Mr. Lueken, a crucial witness, is outside the Southern District of New York's
subpoena power.  G. Angel Ltd., 2008 WL 351660, at *5 (finding that this factor favored transfer
to Florida where witnesses, including one crucial witness, were not subject to the Southern
District of New York's jurisdiction).

     D.    Florida Is The Locus Of The Operative Facts.

        To determine the locus of the operative facts, courts look to "the site of events
from which the claim arises."  G. Angel Ltd., 2008 WL 351660, at *4 (internal quotation marks
omitted) (quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134
(S.D.N.Y. 1992)).

        The locus of the operative facts for the contract and contract-like claims (Counts
I, IV and V) is Florida.  In cases where a law firm has brought contract and contract-like claims
to recover unpaid legal fees from a client, courts have found that the locus of the operative facts
for those claims was the place where the legal services were performed, that is, where the
underlying litigation was actually pending.  Beatie & Obsorn LLP, 431 F. Supp. 2d at 395, 396
(finding that this factor weighed in favor of transferring case asserting claims for breach of

---

[13] Orlando, Florida is in Orange County and Daytona Beach, Florida is in Volusia County.

contract, quantum meruit and tortious interference with contract to California where "the bulk" of a New York law firm's representation of a California client "took place in California courts").

As discussed at length in section II.C.1. above, the thrust of the contract-based claims is that the Defendants failed to pay legal fees. (Compl. ¶¶ 32, 55, 61.) This failure occurred in Florida, and Anderson Kill's legal services were performed in connection with litigation that was predominantly in Florida courts on behalf of Florida entities. (Nalley ¶¶ 31, 38; Bray Decl. ¶ 38.) Any benefit from these legal services was conferred to Florida insureds. (Nalley Decl. ¶¶ 31, 38; Bray Decl. ¶ 38.) Thus, the locus for these claims is clearly Florida.

Similarly, the locus for the fraud claim is Florida. Anderson Kill alleges that Bray & Gillespie Management misrepresented that it would pay the deferred amounts. (Compl. ¶¶ 35, 41, 42(b).) Because this misrepresentation occurred in Florida, the locus for this claim is Florida. Westwood Ventures, Ltd. v. Forum Fin. Group, No. 97 CIV. 514 (WK), 1997 WL 266970, at *3 (S.D.N.Y. May 19, 1997) ("To establish the locus for such a [fraud] claim, courts look to where the alleged fraudulent misrepresentations were made.").

Lastly, as previously explained in section II.C.3. above, the declaratory judgment count seeks to pierce the Bray & Gillespie Entities' corporate veil and is not an independent claim. Thus, the locus for this claim is the locus for the other claims in this case, which is Florida. And even if it were a separate claim, the claim arises from events that occurred in Florida, e.g., the alleged undercapitalization and lack of corporate and organizational formalities and discretion. (See Compl. ¶ 47.)

Therefore, because the locus of the claims asserted by Anderson Kill is Florida, this factor favors transferring the action to the Middle District of Florida.

E.    <u>Florida Law Governs This Dispute.</u>

As a federal court sitting in diversity jurisdiction, New York conflict-of-law rules determine which state's law applies to this dispute. <u>Beatie & Osborn LLP</u>, 431 F. Supp. 2d at 378. Under New York conflict-of-law rules, Florida law governs this dispute, and thus this factor favors transferring the action to the Middle District of Florida.

<u>First</u>, it is clear that Florida law applies to the contract and contract-like claims. In contract and contract-like cases, New York courts apply a "center of gravity" or "grouping of contacts" analysis to determine choice-of-law questions and consider such contacts as the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. <u>Beatie & Osborn LLP</u>, 431 F. Supp. 2d at 379 (internal quotation marks omitted); <u>Fieger v. Pitney Bowes Credit Corp.</u>, 251 F.3d 386, 394 (2d Cir. 2001) (applying New York's choice-of-law analysis for contract claims to quantum meruit claim). In the absence of a choice-of-law provision in a retainer agreement, courts apply the law of the place where the underlying litigation was pending. <u>See</u> <u>Beatie & Osborn LLP</u>, 431 F. Supp. 2d at 379 (noting that while contacts existed with both New York and California, the California contacts predominated because the bulk of the New York law firm's representation took place in California courts).

Here, Anderson Kill's Lexington Engagement Letter does not contain a choice-of-law provision. (<u>See</u> Exhibit D to Nalley Decl.) Although both Florida and New York have place of business contacts, the contract was formed in Florida when Mr. Lueken countersigned the letter, and most of the litigation was in Florida courts on behalf of Florida entities that sustained losses to properties that were in Florida. (Nalley Decl. ¶¶ 31, 38; Bray Decl. ¶ 38.) Under these circumstances, Florida law governs Anderson Kill's contract and contract-like claims.

Second, Florida law applies to Anderson Kill's fraud claim. New York courts undertake a governmental interest analysis to determine which state's law to apply to a tort claim. GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006). Under this test, significant contacts are "almost exclusively, the parties' domiciles and the locus of the tort." Id. (internal quotation marks omitted) (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197 (N.Y. 1985)). In a case such as this where the law is a conduct-regulating rule (as opposed to a loss-allocating rule), "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Id. (internal quotation marks omitted) (quoting Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (N.Y. 1993)).

Here, as explained in section II.C.2. above, the alleged tortious conduct, a misrepresentation, occurred in Florida. Thus, Florida law likely governs this fraud claim. GlobalNet, 449 F.3d at 385 (finding that New York law applied to tort claim of professional negligence because defendant's alleged failure to act happened in New York).

Lastly, Florida law applies to the declaratory judgment count which seeks to pierce the Bray & Gillespie Entities' corporate veil. Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders[.]"). Both of the Bray & Gillespie Entities are organized under Florida law. (Nalley Decl. ¶¶ 2, 9.) Thus, Florida law determines whether these entities' corporate form should be disregarded.

Therefore, because Florida law governs all of Anderson Kill's claims, this factor favors transferring the case to the Middle District of Florida because Florida courts have a greater familiarity with Florida law.

#9643128 v7

F.    Anderson Kill's Choice Of Forum.

Anderson Kill filed its Complaint in the New York Supreme Court, and thus this factor favors retaining the case in New York.

G.    The Middle District Of Florida Is A More Efficient Forum For Resolving This Case.

Although both courts are busy, the Middle District of Florida may be a more efficient forum for hearing and resolving this case. The Middle District of Florida has a lighter docket load than the Southern District of New York.[14] Also, cases are generally resolved on a faster basis in the Middle District of Florida.[15] Furthermore, several of the underlying insurance litigations were filed in the Middle District of Florida, and thus the court is familiar with the factual issues underlying this fee dispute and any related malpractice counterclaim that Bray & Gillespie Management may assert.

Therefore, this factor favors transferring the case to the Middle District of Florida.

---

[14] Between September 2006 and September 2007, 16,125 civil cases were filed in the Southern District of New York and 21,569 civil cases were pending. In the Middle District of Florida, 12,660 civil cases were filed and 11,880 civil cases were pending. See Table C. U.S. District Courts – Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending September 30, 2006 and 2007, http://www.uscourts.gov/judbus2007/appendices/C00Sep07.pdf, attached as Exhibit E. Even after correcting for the greater number of judgeships in the Southern District of New York, judges in the Middle District of Florida have nearly 150 fewer civil cases than their New York counterparts. For the period September 2006 through September 2007, 607 civil cases were assigned to the average judge in the Southern District of New York and 467 civil cases to a judge sitting in the Middle District of Florida. See Table X-1A. U.S. District Courts – Weighted and Unweighted Filings per Authorized Judgeship During the 12-Month Period Ending September 30, 2007, http://www.uscourts.gov/judbus2007/appendices/X01ASep07.pdf, attached as Exhibit F.

[15] For the twelve month period ending September 2007, the median time interval from filing to disposition of a civil case was 9.8 months in the Southern District of New York and 6.8 months in the Middle District of Florida. See Table C-5. U.S. District Courts – Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2007, http://www.uscourts.gov/judbus2007/appendices/C05Sep07.pdf, attached as Exhibit G.

#9643128 v7

H.    The Factors Weigh In Favor Of Transferring This Case To The Middle District Of Florida.

In sum, although Anderson Kill's choice of forum favors retaining the case in New York, the other five relevant factors weigh heavily in favor of transferring the case to the Middle District of Florida.  At the core, this action is a dispute over unpaid invoices for legal services performed predominantly in Florida courts on behalf of Florida entities that sustained losses to Florida properties.  As to be expected in such a case, all of the relevant events took place in Florida and most of the principal witnesses are located in Florida.  Under similar circumstances, courts have routinely transferred cases where "the principal events occurred in another district and the principal witnesses are located there."  G. Angel Ltd., 2008 WL 351660, at *4.  This case is no different, and Defendants respectfully request, as an alternative if the Court does not dismiss the action, that the Court transfer this case to the Middle District of Florida.

#9643128 v7

## CONCLUSION

For all of the above reasons, Defendants respectfully request that this Court dismiss Plaintiff's action for lack of personal jurisdiction and improper venue, or in the alternative, transfer this action to the United States District Court, Middle District of Florida, Orlando Division.


Dated: June 5, 2008
      New York, New York

                                     Respectfully submitted,


                                     *s/Suzanne M. D'Amico*
                                     Kenneth J. King (KK 3567)
                                     Suzanne M. D'Amico (SD 3581)
                                     PEPPER HAMILTON LLP
                                     The New York Times Building
                                     620 Eighth Avenue, 37th Floor
                                     New York, NY  10018-1405
                                     (212) 808-2700

                                     and

                                     OF COUNSEL:

                                     M. Duncan Grant
                                     Andrea Toy Ohta
                                     Alison Altman Gross
                                     PEPPER HAMILTON LLP
                                     3000 Two Logan Square
                                     Eighteenth and Arch Streets
                                     Philadelphia, PA  19103-2799
                                     (215) 981-4000

                                     *Attorneys for Defendants Bray & Gillespie, Inc.; Bray & Gillespie Management, LLC; Charles A. Bray; and Joseph Gillespie*

#9643128 v7