UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDERSON KILL & OLICK, P.C.,

                              Plaintiff,

        - against -

BRAY & GILLESPIE, INC.; BRAY &
GILLESPIE MANAGEMENT, LLC;
CHARLES A. BRAY and JOSEPH
GILLESPIE,

                              Defendants.

Index No.  1:08-cv-4565 (AKH) (RLE)

Electronically Filed

---

**PLAINTIFF ANDERSON KILL & OLICK, P.C.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA**

---

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone: 212-278-1000
Facsimile: 212-278-1733

Attorneys for Plaintiff

July 1, 2008

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ARGUMENT .................................................................................................... 2

I.    THIS COURT HAS PERSONAL JURISDICTION OVER THE
      DEFENDANTS.......................................................................................... 2

      A.    Bray & Gillespie Transacted Business in New York By Retaining
            New York Counsel ....................................................................... 3

II.   VENUE IS PROPER IN THIS DISTRICT ................................................ 8

III.  TRANSFER OF THIS ACTION TO THE MIDDLE DISTRICT OF
      FLORIDA WOULD BE IMPROPER .......................................................... 9

CONCLUSION.................................................................................................. 16

# TABLE OF AUTHORITIES

<u>Page</u>

## CASES

*A. Olinick & Sons v. Dempster Bros., Inc.*,
 365 F.2d 439 (2d Cir. 1966) ........................................................................ 15

*Amins v. Life Support Medical Equipment. Corp.*,
 373 F. Supp. 654 (E.D.N.Y. 1974) ............................................................... 7

*Beatie and Osborn LLP v. Patriot Scientific Corp.*,
 431 F. Supp. 2d 367 (S.D.N.Y. 2006) ...............................................*passim*

*Civ 2062 (LLS)*,
 2005 WL 3077654 (S.D.N.Y. Nov. 17, 2005) ............................................ 14

*Colucci & Umans v. 1 Mark, Inc.*,
 637 N.Y.S.2d 705 (1st Dept 1996) ........................................................... 3, 8

*Computer Express International, Ltd. v MicronPC*,
 No. 01-CV-4801, 2001 WL 1776162 (E.D.N.Y. Dec. 21, 2001) ............... 14

*Cromer Finance Ltd. v. Berger*,
 158 F. Supp. 2d 347 (S.D.N.Y. 2001) ........................................................ 15

*CutCo Indus., Inc. v. Naughton*,
 806 F.2d 361 (2d Cir.1986) ......................................................................... 3

*Elman v. Belson*,
 302 N.Y.S.2d 961 (App. Div. 2d Dept 1969) ............................................... 8

*Fischbarg v. Doucet*,
 880 N.E.2d 22 (2007) .........................................................................*passim*

*Ford Motor Co. v. Ryan*,
 182 F.2d 329 (2d Cir. 1950) ....................................................................... 10

*General Elec. Capital Corp. v. Titan Aviation, LLC*,
 No. 06 Civ 4795 (LTS) 2007 WL 107752
 (S.D.N.Y. Jan. 16, 2007) ........................................................................... 10

*In re Hanger Orthopedic Group, Inc. Securities Litigation*,
 418 F. Supp. 2d 164 (E.D.N.Y. 2006) ........................................................ 15

*Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*,

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page</u>

725 F. Supp. 317 (S.D. Miss. 1989) ....................................................................... 9

*Jecies v. Matsuda*,
  503 F. Supp. 580 (S.D.N.Y.1980) ..................................................................... 8

*Kasey v. Molybdenum Corp. of America*,
  408 F.2d 16 (9th Cir. 1969) .......................................................................... 10

*Kelly v. MD Buyline, Inc.*,
  2 F. Supp. 2d 420 (S.D.N.Y.,1998) .................................................................. 3

*Kotan v. Pizza Outlet, Inc.*,
  400 F. Supp. 2d 44 (D.D.C. 2005) .................................................................. 9

*Kwik Goal, Ltd. v. Youth Sports Publishing, Inc.*,
  No. 06 Civ. 395 (HB), 2006 WL 1517598 (S.D.N.Y. May 31, 2006)................... 11

*Lewis v. American Archives Ass'n*,
  252 N.Y.S.2d 217 (Sup. Ct. 1964) .................................................................. 3

*Matera v. Native Eyewear, Inc.*,
  355 F. Supp. 2d 680 (E.D.N.Y. 2005) ............................................................ 10

*Milgrim Thomajan & Lee P.C. v. Nycal Corp.*,
  775 F. Supp. 117 (S.D.N.Y. 1991) ................................................................. 12

*National Fuel Gas Co. v. U.S. Energy Savings Corp.*,
  No. 07 Civ.-440A(F) 2008 ............................................................................. 11

*New Moon Shipping Co. Ltd. v. Man B & W Diesel AG*,
  121 F.3d 24 (2d Cir.1997) ........................................................................... 2, 3

*Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.*,
  543 N.Y.S.2d 978 (App. Div. 1st Dept. 1989) ............................................... 3, 8

*Oubre v. Clinical Supplies Management, Inc.*,
  No. 05 Civ. 2062 (LLS) ............................................................................. 10, 14

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir.1997) .......................................................................... 3

*Patel v. Patel*,
  497 F. Supp. 2d 419 (E.D.N.Y. 2007) .............................................................. 2

*Polizzi v. Cowles Magazines, Inc.*,

## TABLE OF AUTHORITIES (cont'd)

Page

345 U.S. 663 (1953)................................................................9

Quan v. Computer Sciences Corp., Nos. Cv06-3927 (CBA)(JO),
   2008 WL 89679 (E.D.N.Y. Jan. 8, 2008)..........................15

Rahl v. Band,
   328 B.R. 387 (S.D.N.Y. 2005)...........................................15

Reiner v. Durand,
   602 F. Supp. 849 (S.D.N.Y. 1985)..................................4, 8

Royal & Sunalliance v. British Airways,
   167 F. Supp. 2d 573 (S.D.N.Y.2001)...............................11

S-Fer Int'l, Inc. v. Paladion Partners, Ltd.,
   906 F. Supp. 211 (S.D.N.Y.1995)....................................14

SongByrd v. Estate of Grossman,
   206 F.3d 172 (2nd Cir. 2000)...........................................10

In re Warrick,
   70 F.3d 736 (2d Cir.1995)................................................11

Weinberg v. Colonial Williamsburg, Inc.,
   215 F. Supp. 633 (E.D.N.Y. 1963)...................................9

Winston & Strawn v. Dong Won Securities Co., Ltd,
   No. 02 Civ. 0183 (RWS), 2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002)...........6, 7

## STATUTES

28 U.S.C. §1404(a)............................................................10, 12

28 U.S.C. § 1441..............................................................8, 9

N.Y. C.P.L.R. § 302(a)........................................................2

N.Y. C.P.L.R. § 503(a)........................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDERSON KILL & OLICK, P.C.,

Plaintiff,

- against -

BRAY & GILLESPIE, INC.; BRAY &
GILLESPIE MANAGEMENT, LLC;
CHARLES A. BRAY and JOSEPH
GILLESPIE,

Defendants.

Index No.  1:08-cv-4565 (AKH) (RLE)

Electronically Filed

---

## PLAINTIFF ANDERSON KILL & OLICK, P.C.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA

### <u>INTRODUCTION</u>

Plaintiff Anderson Kill & Olick, P.C. (AKO") respectfully submits this memorandum of law in opposition to defendants' (collectively, "Defendants" or "B&G") motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer this case to the United States District Court for the Middle District of Florida.  As discussed herein, this Court has personal jurisdiction over Defendants for a multitude of reasons including that Defendants purposely have availed themselves of the New York forum.  In addition, as this case was removed from a New York State Court, venue is proper in this District.  Finally, this Court should not transfer this case because such act would constitute an abuse of discretion.

The facts relevant to the issues in this motion are set forth in the declarations of: (1) Harold Lueken ("Lueken Dec."), (2) Michael J. Lane ("Lane Dec."),

(3) Maya Cater ("Cater Dec.") and (4) Finley T. Harckham ("Harckham Dec.") served and filed herewith.  Because the specific facts, taken from those declarations, are discussed in detail below, no separate Statement of Facts is submitted here.

## ARGUMENT

I.    **THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS**

New York law governs the issue of personal jurisdiction.  *Patel v. Patel*, 497 F. Supp. 2d 419, 423 (E.D.N.Y. 2007) ("Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state."). Section 302(a) of New York's long-arm statute provides, in part, that a "New York court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

> 1.  transacts any business within the state or contracts anywhere to supply goods or services in the state;
>
> . . .
>
> 3.  commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

N.Y.C.P.L.R. § 302(a).

In this case, Defendants' jurisdictional challenge precedes any pretrial discovery.  *See e.g., New Moon Shipping Co. Ltd. v. Man B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir.1997).  Prior to discovery, the plaintiff need only make legally sufficient

allegations of jurisdiction to defeat a motion to dismiss. *See id.* In assessing such a challenge, the Court should assume the truth of all well-pleaded jurisdictional allegations found in the complaint or in supporting affidavits offered by the plaintiff, and should read any ambiguities in those allegations in a light favorable to the plaintiff. *See, e.g., PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

A.    Bray & Gillespie Transacted Business in New York By Retaining New York Counsel

The New York courts repeatedly have asserted personal jurisdiction over a non-domiciliary client who retains and sustains an ongoing attorney-client relationship with New York counsel, particularly where, as here: (1) the client sought out New York counsel and (2) Defendants sent communications regularly to plaintiffs' New York office. *See e.g., Fischbarg v. Doucet*, 880 N.E.2d 22, 27 (2007); *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006); *Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 430 (S.D.N.Y.,1998); *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.*, 543 N.Y.S. 2d 978, 981 (App. Div. 1st Dept. 1989); *Colucci & Umans v. 1 Mark, Inc.*, 637 N.Y.S.2d 705, 706 (1st Dept 1996); and *Lewis v. American Archives Ass'n*, 252 N.Y.S.2d 217 (Sup. Ct. 1964).

When jurisdiction under the long-arm statute is challenged, New York courts, as exemplified by the cases cited immediately above, look to the following factors to determine whether the minimum contacts required to establish long-arm jurisdiction are present:

- Non-domiciliary's solicitation of New York counsel;

- Non-domiciliary's phone calls to, and teleconferences with, New York counsel;

- Non-domiciliary's visits to New York counsel;

- Attorney-work product and attorney-client communications protected by New York law;

- Existence and terms of a written retainer agreement

- Law contained within a retainer agreement;

- Location of legal work;

- Location of litigation.

*Reiner v. Durand*, 602 F. Supp. 849, 852 (S.D.N.Y. 1985) (retainer and majority of work occurred in New York).

There is jurisdiction in New York in this case because B&G projected itself into New York by soliciting a New York attorney. *See Fischbarg*, 880 N.E. 2d at 27, 378; *Beatie and Osborn LLP*, 431 F. Supp. 2d at 367. B&G specifically sought counsel from AKO's New York shareholder, Michael J. Lane. Lueken Dec. ¶¶ 7-8. Mr. Lane and B&G's in-house counsel, Harold Lueken, were friends and had worked together when Mr. Lueken previously was General Counsel of Kmart Corporation from 2003-2005. Lane Dec. ¶ 7. After calling Mr. Lane at AKO's New York office, Mr. Lueken, on behalf of B&G, hired AKO to handle various B&G legal matters. Lane Dec. ¶ 2; Lueken Dec. ¶ 7.

The Retainer Agreement between the parties, attached to the Lane Declaration as Exhibit A, is the single most important document establishing this Court's jurisdiction. Mr. Lane prepared the Retainer Agreement in Anderson Kill's New York

office on its New York stationery. Mr. Lueken countersigned it and sent it back to AKO's New York office. Mr. Lane is the only AKO lawyer specified in the agreement. Mr. Lane mailed the retainer agreement from AKO's New York office. The Retainer Agreement was signed by B&G's sophisticated in-house attorney, Mr. Lueken, and he sent it to New York.

The parties had a mutual expectation that New York law would apply and that a dispute would be litigated in New York. Indeed, Mr. Lueken states in his declaration that in light of the citations to New York law, he believed B&G was submitting itself to the jurisdiction of the New York courts. Lueken Dec. ¶¶ 12-19. The Retainer Agreement references both the rules of the Appellate Divisions of the Supreme Court of New York, and Part 137 of the Rules of the Chief Administrator of New York. Further, after the parties' relationship soured in March, B&G requested a copy of, and AKO sent to B&G's new in-house counsel, a copy of, Part 137. Lane Ex. B. Over the course of the retention, B&G retained AKO to handle a total of 8 matters. From the outset, Mr. Lane was the lead counsel.[1] Lueken Dec. ¶ 15; Lane Dec. ¶ 14. The majority of the work AKO completed for B&G was done by AKO's New York personnel.

The proof is in the time records. Over the 22 months during which AKO represented B&G, Mr. Lane billed 2,189 hours, whereas Mr. Ellison billed only 189 hours on the B&G matters. Lane Ex. C. Mr. Lane took the key party and witness depositions in the vast majority of litigations in which B&G was a party. Lane Dec. ¶ 15.

---

[1]    B&G's assertion, through its CFO Stephen Nalley, and Messrs. Bray's and Gillepie's declarations which parrots this assertion, that B&G hired AKO to obtain the services of John Ellison, and that Mr. Lane was to play only a subordinate and administrative role, is just wrong. Nalley Dec. ¶¶ 24-25, Bray Dec. ¶¶ 28-29; Gillespie Dec. ¶¶ 27-28.

Additionally, Mr. Lueken came to AKO's New York office, to meet with Mr. Lane and his legal team prior to their January 2007 meeting with Lexington in Boston. Lueken ¶ 29. In addition, Mr. Lueken made four trips to New York in connection with B&G's efforts to raise capital, Mr. Gillespie made five such trips and Ken Hricko, (a member of B&G's Executive Committee) made one trip to New York. Lueken Dec. ¶¶ 29-32.

This case is controlled by *Fischbarg v. Doucet*, supra. There, the New York Court of Appeals found that the New York court had personal jurisdiction over a California client where the California client had purposefully attempted to establish an attorney-client relationship in New York, to represent it in a litigation being conducted in Oregon. *Fischbarg*, 880 N.E. 2d at 26-30. The court reasoned that the quality of the California resident's contacts with New York established "transacting business within New York." Specifically, the court noted that, the California clients had: solicited plaintiff, a New York lawyer, in New York via phone calls, faxes and emails; projected themselves into the New York legal market; and invoked the benefits and protections of New York law relating to attorney-client privilege. *Id.* Further, the *Fischbarg* court noted that it was irrelevant that the California resident was never physically present in New York. *Id.*

To the extent that B&G implies that their contacts were merely "submitting payment" to the New York office, B&G is incorrect. The defendants cite *Winston & Strawn v. Dong Won Securities Co., Ltd*, No. 02 Civ. 0183 (RWS), 2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002), for the proposition that submitting payment alone to a New

York office does not confer personal jurisdiction.[2]  Were B&G's only contact with AKO's New York headquarters the submission of payments then *Winston & Strawn* would be relevant.  But as established, B&G's contacts with New York were much deeper and more substantial than merely paying AKO's bills in New York.  For example, a substantial portion of all the AKO work (including Mr. Lane's), was done by New York personnel.  Lane Dec. ¶ 15, and Exhibit C thereto.  Under the *Fischbarg* line of cases, the location of legal work done is highly significant.  In addition, there were numerous telephone calls, emails, and meetings in New York.  Lueken Dec. ¶¶ 29-32; Lane Dec. ¶ 19-20.  The Retainer Agreement cited potential resolution of fee dispute under New York law.  Lane Dec. ¶ 10-11.

In searching for some authority that supports its position, B&G uncovered the rarely cited case of *Amins v. Life Support Medical Equipment. Corp.* 373 F. Supp. 654 (E.D.N.Y. 1974) Def. Mem. 16.  In *Amins,* the court held that it would be unfair to force a small, out of state client to retain New York counsel and litigate in New York over a bill for $8,000, where the New York attorney performed only a single transaction. *Amins,* 373 F. Supp. at 657 (E.D.N.Y. 1974).  As opposed to the client in *Amnis*, B&G is a multi-million dollar company with sophisticated in-house counsel and complex legal problems.  The unpaid fees total just over $2.06 million.  As noted extensively above, B&G repeatedly availed itself of New York jurisdiction via phone calls, emails, faxes,

---

[2]     The court in *Winston & Strawn* found that a Korean client was not subject to personal jurisdiction in New York, where the client contacted the New York branch of an Illinois law firm in order to hire attorneys in the California branch of the office, where the retainer letter itself stated that a majority of the work would be performed in Los Angeles, and the mere billing was sent to New York. *Winston & Strawn v. Dong Won Securities Co., Ltd,* No. 02 Civ. 0183 (RWS), 2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002).

and trips to New York, etc.  In sum, *Aminis* is factually as far from the instant case as any attorney's collection action could be.

The New York case law holds that personal jurisdiction exists in an action for unpaid fees where an out-of-state client has visited or substantially participated in the activities of the lawyer in New York. *See e.g., Fischbarg v. Doucet*, 880 N.E. 2d at 27; *Beatie and Osborn LLP*, 431 F. Supp. 2d 367; *Colucci & Umans.*, 637 N.Y.S. 2d at 706; *Reiner*, 602 F. Supp. at 849; *Jecies v. Matsuda*, 503 F. Supp. 580 (S.D.N.Y.1980); *Otterburg v. Shreve City Apts.*, 543 N.Y.S.2d 978 (1st Dept.1989); *Elman v. Belson*, 302 N.Y.S.2d 961 (App. Div. 2d Dept. 1969).  That is the case with B&G.

Faced with major litigation needs, B&G reached out to hire AKO, a firm whose prominence in insurance recovery and litigation work is well-known.  In less than two years, AKO attorneys and other paraprofessionals and staff provided services billed at approximately $4 million.  The majority of that work was completed by New York personnel.  It was all billed from New York.  The vast majority of conferences, telephone calls, emails, regarding the work were conducted with Mr. Lane, a New York based AKO shareholder, in New York.  Under New York law, personal jurisdiction over B&G here is proper.

## II.    <u>VENUE IS PROPER IN THIS DISTRICT</u>

The general removal statute, Section 1441 of Title 28, provides that the venue of a removed case is "the district and division embracing the place where such action is pending."  28 U.S.C. § 1441.  Accordingly, the general venue statutes, Sections 1391 through Section 1393, cited by B&G in its brief, do not apply to this case, which was initiated in the New York state court and subsequently removed to the federal court. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) 14C Wright

et al., Federal Practice and Procedure § 3726, at 123-24 (3d ed.1998). It therefore is immaterial whether the federal court to which the action is removed would not have been in a proper district for venue purposes had the action originally been brought there. *Id.*

Defendants' voluntary removal of a case to federal court confers venue over the defendants. A party that removes a case is barred from arguing that venue is improper. See, e.g. *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44 (D.D.C. 2005); *Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 725 F. Supp. 317, 320 (S.D. Miss. 1989); *Weinberg v. Colonial Williamsburg, Inc.*, 215 F. Supp. 633, 638 (E.D.N.Y. 1963), collected and discussed in Wright et. al., *op cit. supra*, at 123-124.

Further, it should be noted that venue in New York County was proper because AKO for the purpose of the statute resides in New York County. N.Y. C.P.L.R. § 503(a),[3]. Since venue was proper in New York County, once removed, venue still is appropriate in the United States District Court of the Southern District of New York, pursuant to 28 U.S.C.A. § 1441(a).

## III.    **TRANSFER OF THIS ACTION TO THE MIDDLE DISTRICT OF FLORIDA WOULD BE IMPROPER**

As demonstrated in Points I and II above, this Court has jurisdiction over the defendants and this action is properly venued here. While this Court has the power

---

[3]    "Except where otherwise prescribed by law, the place of trial shall be in the county in which one of the parties resided when it was commenced; or, if none of the parties then resided in the state, in any county designated by the plaintiff. A party resident in more than one county shall be deemed a resident of each such county." N.Y. § C.P.L.R. 503(a).

under 28 U.S.C. §1404(a) to transfer any action to another District Court where venue

may properly be laid, to do so in this case would violate established case law.[4]

Disingenuously, defendants list, as if neutral, a set of nine factors that are

taken into account when a party seeks a 1404(a) transfer.  (D. Memo at 23).[5]

Defendants, however, ignore the fundamental predicates to considering these factors.

It is axiomatic that:

> The moving party has the burden to establish a clear and
> convincing showing that a transfer is appropriate and that the
> motion should be granted.  *Matera v. Native Eyewear, Inc.*, 355
> F.Supp.2d 680, 687 (E.D.N.Y. 2005)(citing  *Ford Motor Co. v.
> Ryan*, 182 F.2d 329, 330 (2d Cir. 1950).

*General Elec. Capital Corp. v. Titan Aviation, LLC*, No. 06 Civ. 4795 (LTS)(FM), 2007

WL 107752,*6 (S.D.N.Y. Jan. 16, 2007).  An alternative formulation of the same

principle, again relying on *Ford Motor Co.*, appears in *Oubre v. Clinical Supplies

Management, Inc.*, No. 05 Civ. 2062 (LLS) 2005, WL 3077654, *2 (S.D.N.Y. Nov. 17,

2005) (emphasis added):

> Absent a clear cut and convincing showing by defendant that the
> balance of convenience weighs strongly in favor of the transferee
> court, plaintiff's choice of forum will not be set aside. (citations
> omitted)

---

[4]    While a transfer order is interlocutory , it is reviewable on an abuse of discretion basis after a final judgment is rendered.  *SongByrd v. Estate of Grossman*, 206 F. 3d 172 (2nd Cir. 2000).  Precisely because an erroneous decision to transfer "is unlikely to constitute reversible error at that mature stage of the case," 15 *Wright et. al.*, Federal Practice and Procedure, § 3855, text at n.3, extreme care must be exercised when depriving a plaintiff of its chosen forum.  *Kasey v. Molybdenum Corp. of America*, 408 F. 2d 16 (9th Cir. 1969).

[5]    Citations to Defendants' Memorandum of Law in Support of their Motion to Dismiss for Lack of Personal Jurisdiction are in the form "D. Memo" and page references.

Against this background, it is odd, if not misleading, for Defendants to take their list of the nine factors that are considered by the transferor court from *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006), and not reveal that the *Beatie* court specified that:

> The moving party must "make a clear-cut showing that transfer is in the best interests of the litigation." (citations omitted)

It seems equally odd for Defendants to fail to mention that in *Beatie*, an action by a New York law firm for its fees against a California client, transfer from New York to California was, in fact, denied.[6]

The single most important factor when a 1404(a) transfer is requested is the plaintiff's choice of forum. Plaintiff's choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *See id; Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 576 (S.D.N.Y.2001) (citing *In re Warrick*, 70 F.3d 736, 741 (2d Cir.1995)); *National Fuel Gas Co. v. U.S. Energy Savings Corp.*, No. 07 Civ.-440A(F) 2008, WL 2405725, *3 (W.D.N.Y. June 11, 2008). Here, it is critically important that plaintiff is a New York-based law firm. Compare, *e.g.*, *Kwik Goal, Ltd. v. Youth Sports Publishing, Inc.*, No. 06 Civ. 395 (HB), 2006 WL 1517598, *2 (S.D.N.Y. May 31, 2006) ("The chosen forum is not plaintiff's home state"). Against this background, it is evident that under the *Beatie*

---

[6]     Because there was a specific forum-selection clause in the applicable retainer agreement in *Beatie*, that case is not precisely on point. However, it is compelling that B&G's then - General Counsel (Harold Lueken) submits a declaration herewith in which he states that he believed B&G was submitting itself to the jurisdiction of the New York courts, particularly in light of the references in the Retainer Agreement to New York law -- especially in connection with New York rules for fee disputes.

factors, defendants fail to make a strong showing for transfer; rather the factors point to retaining the action in New York.

The litigants here are a substantial New York-based law firm that practices nationally, and a substantial leisure industry set of defendants who selected that New York-based firm as its attorneys. Wherever this case is tried, one side or the other will have to bring the witnesses it controls to court. As Judge Patterson opined in a similar situation – New York law firm against non-New York client for fees -- some years ago, "Deference is given to the plaintiff's choice of forum because the purpose of §1404(a) is not to shift the inconvenience from one party to the other." *Milgrim Thornajan & Lee P.C. v. Nycal Corp.*, 775 F. Supp. 117, 122 (S.D.N.Y. 1991).

Defendants contend that there are seven "key witnesses" who, presumably, Defendants will call as trial witnesses. (Def. Br. at 25). Three of the "key witnesses" are either named defendants – Mr. Bray and Mr. Gillespie – or work for the defendants, which is the case for Stephen Nalley. Two of the "key witnesses, according to Mr. Nalley's declaration, are Michael J. Lane, an AKO senior shareholder who works in New York, and John Ellison, a former AKO senior shareholder who works in Philadelphia and New York for the Reed Smith firm, and who is currently retained by Defendants and therefore within their control as a potential trial witness.

Defendants contend that two "key witnesses" are outside the subpoena power of this Court. One, Harold Lueken, the former general counsel of Defendants, will travel to New York for trial. In fact, Mr. Lueken is planning to move back to the metropolitan New York City area. *See* Lueken Dec. ¶ 35. The other, Karen Dyer, apparently is "current outside counsel to Bray & Gillespie Management," Nalley Dec.

¶ 56(c).[7]  Thus, as is the case with Mr. Ellison, she is within defendants" control and if defendants wish they can bring her to New York to testify.  There are simply no non-party "key witnesses," as defined by Defendants, whose testimony must be compelled, and therefore the entire argument that the witness factors favor transfer is misplaced.

However, AKO notes that "Bray & Gillespie Management" contends that "Anderson Kill had not deposed key witnesses, secured key expert witnesses, and had not drafted trial briefs, exhibit lists, witness lists, or any motions in limine" in connection with a case known as *Belfor*.[8]  Nalley Dec., ¶¶ 47 and 48.  While it is hard to reconcile that set of allegations with the fact that several of the very Anderson Kill lawyers who were participating in the preparation of the *Belfor* case were retained by Defendants and actually tried the *Belfor* case recently, it certainly appears that Defendants intend to contest the massive bill that they owe plaintiffs on a theory of malpractice.  If Defendants do so, then the more than a dozen present and former Anderson Kill attorneys and other professionals that worked on this engagement will be likely trial witnesses, and none of them is in Florida.

Defendants argue that the "locus of operative facts" favors transfer.  (D. Memo at 26).  This argument is based on a clever but erroneous equation between "the place where the legal services were performed" and the place "where the underlying litigation was actually pending."  (Def. Br. at 26).  As discussed above, very little of the legal work for which AKO was retained took place in Florida.  The vast majority of hours

_____

[7]    AKO is mystified how Ms. Dyer -- B&G's Florida's local counsel in one of the cases AKO handled for B&G -- could have any testimony relevant to this fee dispute.

[8]    As a matter of fact, AKO denies this allegation and asserts the discovery will reveal these statements as false.

spent on this representation took place in by AKO's New York personnel in New York, or otherwise in New Jersey and in Pennsylvania, all within easy commuting distance of this Court and all about one thousand miles from Orlando, Florida, the site of the proposed transferee court. Over one-half of the billed hours represents work done by AKO New York personnel. Lane Ex. C. Just as the "locus of operative facts" supports jurisdiction in this Court, it supports retention of this action here.

The argument that transfer ought to be granted because Florida's substantive law will govern the dispute between the parties carries no weight. Whether New York or Florida law governs the obligation of a client to pay a New York law firm its fees is not at all clear, but the inquiry is irrelevant since Defendants who bear the burden of demonstrating their alleged right to transfer, fail to allege that there is any meaningful difference between the law of the two jurisdictions. Even if there were to be any claimed difference, "federal courts are deemed capable of applying the substantive law" of other states," *Computer Express International, Ltd. v MicronPC*, No. 01-CV-4801, 2001 WL 1776162, *9 (E.D.N.Y. Dec. 21, 2001); *see e.g.*, *Oubre v. Clinical Supplies Management, Inc.*, No. 05 Civ 2062 (LLS), 2005 WL 3077654, *5 (S.D.N.Y. Nov. 17, 2005) (applying another state's substantive law weighs only slightly in favor of transfer); *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215-16 (S.D.N.Y.1995) ("If New York's choice of law rules provide that California law is the appropriate law to apply, then a New York court will be capable of applying it."). Thus, defendants' discussion of the issue (D. Memo at 28, 29), does not forward the debate in the slightest.

Defendants' final argument for transfer is based on the apparent fact that the medial time from filing to disposition of a civil case in this Court last year was 9.8 months, while the median time in the Middle District of Florida was 6.8 months. While gross differences in docket congestion may have some modest bearing on transfer, *see A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 445 (2d Cir. 1966) (two years in one district compared to six to eight months in the other district), the factor is not relevant if the difference is a mere matter of months. *Quan v. Computer Sciences Corp.*, Nos. Cv06-3927 (CBA)(JO), 2008 WL 89679, *9 (E.D.N.Y. Jan. 8, 2008) (holding that a difference of 3.3 months in the docket's media time from filing to deposition of a civil case was insufficient on its own to warrant a transfer); *See In re Hanger Orthopedic Group, Inc. Securities Litigation* 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006) (finding 2.7 month difference in relative median disposition times to weigh marginally in favor of transfer).

"[I]t is well-accepted that the Southern District of New York has the resources to adjudicate complex litigation such as the present action." *Rahl v. Band,* 328 B.R. 387, 408 (S.D.N.Y. 2005). "While the docket of the Southern District is an active one, courts in this district have shown themselves more than able to address the issues that arise in complex actions in an expeditious and comprehensive manner." *Cromer Finance Ltd. v. Berger*, 158 F. Supp. 2d 347, 355 (S.D.N.Y. 2001).

In sum, none of the recognized factors relevant to a transfer under Section 1404(a) even suggests that this action should be moved from the forum selected by plaintiff. Given the substantial burden on Defendants imposed by the case law, the application for transfer should be summarily denied.

## CONCLUSION

Based on the foregoing, the Court should deny Defendants' motion to dismiss the case for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to the Middle District of Florida.

Dated:  New York, New York       ANDERSON KILL & OLICK, P.C.
        July 1, 2008

                                By:  /s/ Jeff Glen
                                     JEFFREY E. GLEN, ESQ. (JG -- 8277)
                                     1251 Avenue of the Americas
                                     New York, NY  10020
                                     Telephone:  212-278-1000
                                     Facsimile:  212-278-1733

                                     Attorney for Plaintiff
                                     Anderson Kill & Olick, P.C.