UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDERSON KILL & OLICK, P.C.,

                              Plaintiff,

        - against -

BRAY & GILLESPIE, INC.; BRAY &
GILLESPIE MANAGEMENT, LLC;
CHARLES A. BRAY and JOSEPH
GILLESPIE,

                              Defendants.

Index No.  1:08-cv-4565 (AKH) (RLE)

---

## PLAINTIFF ANDERSON KILL & OLICK, P.C.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6)

---

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone: 212-278-1000
Facsimile: 212-278-1733

Attorneys for Plaintiff

July 1, 2008

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS ............................................................................ 1

SUMMARY OF ARGUMENT ...................................................................... 2

ARGUMENT ................................................................................................. 3

I.  THE APPLICABLE STANDARD FOR DECIDING THE MOTION ........................ 3

II.  THE COMPLAINT PROPERLY PLEADS THAT BRAY & GILLESPIE'S
     CONDUCT CONSTITUTES FRAUD .................................................................... 5

     A.  The Complaint Alleges Fraud with Sufficient Particularity ........................ 6

         1.  The Pleading Standard ....................................................................... 6

         2.  The Complaint Clearly Identifies The Speaker Of The
             Fraudulent Statement .......................................................................... 7

         3.  The Complaint Adequately Alleges B&G's Fraudulent Intent .......... 9

         4.  The "Economic Loss Rule" is Irrelevant at the Pleading
             Stage of this Case ............................................................................. 11

III.  THE COMPLAINT PROPERLY ALLEGES THAT BRAY & GILLESPIE,
      INC. AND BRAY & GILLESPIE MANAGEMENT, LLC WERE USED TO
      PERPETUATE A FRAUD .................................................................................. 13

IV.  THE COMPLAINT PROPERLY STATES A CAUSE OF ACTION FOR AN
     ACCOUNT STATED ......................................................................................... 18

V.  THE BREACH OF CONTRACT, *QUANTUM MERUIT*, AND ACCOUNT
    STATED CLAIMS WERE PROPERLY PLEADED AGAINST BRAY &
    GILLESPIE, INC. AND MESSRS. BRAY AND GILLESPIE BECAUSE
    THEY WERE PARTIES TO THE RETAINER AGREEMENT AND
    RECEIVED MATERIAL BENEFITS FROM AKO'S PERFORMANCE OF
    SERVICES UNDER THE AGREEMENT .......................................................... 22

CONCLUSION ............................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*9 E. 38th Street Assoc., L.P. v. George Feher Assoc., Inc.,*
   640 N.Y.S.2d 520 (App. Div. 1st Dep't 1996) ...................................................... 18

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007) ..................................................................................... 2, 4, 5

*Caputo v. Pfizer, Inc.,*
   267 F.3d 181 (2d Cir. 2001) ................................................................................. 8

*Carpenter Contractors of Am., Inc. v. Fastener Corp of Am., Inc.,*
   611 So. 2d 564 (Fla. Dist. Ct. App. 1992) ........................................................... 20

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002) ................................................................................. 8

*Conley v. Gibson,*
   355 U.S. 41 (1957) ........................................................................................... 4, 5

*Cosmas v. Hassett,*
   886 F.2d 8 (2d Cir. 1989) ..................................................................................... 10

*In re DVI, Inc.,*
   326 B.R. 301 (Bkrtcy. D. Del. 2005) .................................................................... 3

*Dania Jai-Alai Palace, Inc. v. Sykes,*
   450 So. 2d 1114 (Fla. 1984) ........................................................................... 15, 16

*Enzo Biochem, Inc. v. Johnson & Johnson,*
   No. 87 Civ. 6125 (KMW), 1992 WL 309613 (S.D.N.Y. Oct. 15, 1992) .......... 10, 11

*Erdman Anthony & Assoc., Inc. v. Barkstrom,*
   747 N.Y.S.2d 670 (App. Div. 4th Dep't 2002) ..................................................... 21

*Erickson v. Pardus,*
   __ U.S. __, 127 S. Ct. 2197 (2007) ...................................................................... 5

*Fiber Consultants, Inc. v. Fiber Optek Interconnect Corp.,*
   792 N.Y.S.2d 89 (App. Div. 2d Dep't 2005) ........................................................ 18

*Gourdine v. Cabrini Med. Ctr.,*
   128 F. App'x 2d 780 (2d Cir. 2005) ..................................................................... 10

## TABLE OF AUTHORITIES (cont'd)

Page

Government of Aruba v. Sanchez,
    216 F. Supp. 2d 1320 (S.D.Fla. 2002) ................................................ 15

In re Gulf Northern Transport, Inc.,
    340 B.R. 111 (Bankr. M.D. Fla. 2006) .......................................... 19, 20

Hilton Oil Transp. v. Oil Transp. Co., S.A.,
    659 So. 2d 1141 (Fla. Dist. Ct. App. 1995) ...................................... 16

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)................................................... 2, 4, 5

Johnson Enters of Jacksonville, Inc. v. FPL Group, Inc.,
    162 F.3d 1290 (11th Cir. 1998)................................................... 15

Kittay v. Kornstein,
    230 F.3d 531 (2d  Cir. 2000).................................................... 3

Luce v. Edelstein,
    802 F.2d 49 (2d Cir. 1986)................................................passim

Marcus Borg Rosenberg & Diamond v. Gilbert, Segall & Young,
    670 N.Y.S.2d 73 (App. Div. 1st Dep't 1998) .................................. 21

Mercado v. Lion's Enter., Inc.,
    800 So. 2d 753 (Fla. Dist. Ct. App. 2001) ..................................... 20

Metropolitan Life Ins. Co. v. McCarson,
    467 So. 2d 277 (Fla. 1985)..................................................... 22

Meyer v. Oppenheimer Mgmt. Corp.,
    764 F.2d 76 (2d Cir. 1985)..................................................... 3

Mills v. Polar Molecular Co.,
    12 F.3d 1170 (2d. Cir. 1993)................................................. 8, 9

Morales v. New York State Dep't of Corrections,
    842 F.2d 27 (2d Cir. 1988).................................................... 3

Morgan Stanley DW Inc. v. Halliday,
    873 So. 2d 400 (Fla. Dist. Ct. App. 2004) ..................................... 22

Morris v. New York State Dept. of Taxation and Finance,
    623 N.E.2d 1157 (N.Y. 1993) .................................................. 17

## TABLE OF AUTHORITIES (cont'd)

<u>Page</u>

*Murray v. City of Milford, Connecticut*,
    380 F.2d 468 (2d Cir. 1967)............................................................. 3

*Network Enter., Inc., v. APBA Offshore Prods., Inc.*,
    264 F. App'x 36 (2d Cir. 2008)................................................... 14, 15

*Reisman, Peirez & Reisman, L.L.P. v. Gazzara*,
    839 N.Y.S 2d 436 (Sup. Ct. 2007) .................................................. 19

*Resolution Trust Corp. v. Latham & Watkins*,
    909 F. Supp. 923 (S.D.N.Y. 1995)............................................. 16, 17

*Shields v. Citytrust Bankcorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)............................................................. 7

*Sisters of Charity Hosp. of Buffalo v. Riley*,
    661 N.Y.S.2d 352 (App. Div. 4th Dep't 1997) ................................ 21

*Transportation Ins. Co. v. Star Indus., Inc.*, No. CV01-1341 (ARL),
    2005 WL 1801671 (E.D.N.Y July 28, 2005)..................................... 19

*Turkish v. Kasenetz*,
    27 F.3d 23 (2d Cir. 1994)................................................................ 10

*U-Haul Intern., Inc. v. Jartran, Inc.*,
    793 F.2d 1034 (9th Cir. 1986)........................................................ 15

*U.S. v. $15,270,885.69 On Deposit In Account No. 8900261137*,
    No. 99 Civ. 10255, 2000 WL 1234593 (S.D.N.Y. Aug. 31, 2000) ......... 8

## STATUTES

Fed. R. Civ. P. 8(a)(2) ...................................................................... 3

Fed. R. Civ. P. 9(b)................................................................... passim

Fed. R. Civ. P. 12(b)(6) ............................................................ passim

## MISC.

*Wright and Miller*, 5A Fed. Prac. & Proc. Civ.3d § 1291................................ 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDERSON KILL & OLICK, P.C.,<br><br>                              Plaintiff,<br><br>             - against -<br><br>BRAY & GILLESPIE, INC.; BRAY &<br>GILLESPIE MANAGEMENT, LLC;<br>CHARLES A. BRAY and JOSEPH<br>GILLESPIE,<br><br>                              Defendants. | Index No.  1:08-cv-4565 (AKH) (RLE) |

## PLAINTIFF ANDERSON KILL & OLICK, P.C.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6)

### INTRODUCTION

Plaintiff Anderson Kill & Olick, P.C. ("AKO") respectfully submits this memorandum of law in opposition to defendants' (collectively, "Defendants" or "B&G") motion to dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). As set forth herein, the causes of action that B&G challenges are properly pleaded under Fed. R. Civ. P. 9(b) and 12(b)(6). Specifically, Defendants have moved to dismiss the fraud, declaratory judgment, and account stated claims against all Defendants, and the breach of contract and quantum meruit claims against Bray & Gillespie Inc., Charles A. Bray ("Bray"), and Joseph Gillespie ("Gillespie"). The motion is meritless in its entirety.

### STATEMENT OF FACTS

The relevant facts to the issue in this motion are set forth in the accompanying declarations of: (1) Harold Lueken ("Lueken Dec."); (2) Maya Cater

("Cater Dec."); (3) Michael J. Lane ("Lane Dec."); and (4) Finley T. Harckham ("Harckham Dec.") served and filed herewith. Because the specific facts, taken from these declarations, are discussed in detail below, no separate statement of facts is submitted herein.

## SUMMARY OF ARGUMENT

- Under long-standing Supreme Court and Second Circuit cases, affirmed for litigations such as this by the recent *Twombly* and *Iqbal* decisions, every claim is adequately pleaded;

- The fraudulent inducement claim alleges with adequate particularity the fraudulent statements, the makers of those statements, and the fraudulent intent with which they were made;

- The Complaint adequately alleges that all Defendants acted as alter egos of each other and under applicable veil piercing law each defendant is liable to plaintiff for the contractual breaches and tortious conduct of each other defendant;

- The Complaint states all of the elements of a claim for an account stated and since there are no genuine issues of material fact to contradict the account stated as furnished to and approved by the Defendants, AKO motion for partial summary judgment thereon, submitted as a cross-motion herewith, should be granted.

- The Complaint adequately states claims against Bray & Gillespie Inc., and against Mr. Bray and Mr. Gillespie personally, both as

parties to the Retainer Agreement and as entities and persons

obtaining material benefit from AKO's performance under its terms.

## ARGUMENT

### I.    THE APPLICABLE STANDARD FOR DECIDING THE MOTION

Defendants move to dismiss the Complaint, pursuant to Rule 12(b)(6), for

failure to state a claim upon which relief can be granted. The law has long been clear

that such a dismissal is a 'drastic step.'" *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d

76, 80 (2d Cir. 1985). A motion to dismiss under Rule 12 must be denied "unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Morales v. New York State Dep't of Corrections*, 842

F.2d 27, 30 (2d Cir. 1988). The Court must accept the pleader's allegations of facts as

true and any reasonable inferences should be drawn in its favor. *Murray v. City of

Milford, Connecticut*, 380 F.2d 468, 470 (2d Cir. 1967).

A motion to dismiss should be considered in light of Rule 8(a) which

provides that a pleading which sets forth a claim for relief must contain a short and plain

statement of the claim showing that the pleader is entitled to relief. *See* Fed. R. Civ.

P. 8(a)(2). "Because Rule 8 is fashioned in the interest of fair and reasonable notice,

not technicality, '[m]ore extensive pleading of facts is not required.'" *In re DVI, Inc.*, 326

B.R. 301, 306 (Bkrtcy. D. Del. 2005) (quoting *Wynder v. McMahon*, 360 F.3d 73, 77 (2d

Cir. 2004)). "Dismissal [under Rule 8(a)] 'is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true

substance, if any, is well disguised.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.

2000). If a court is able to understand the allegations sufficiently to determine that they

state a claim, a complaint satisfies Rule 8. *Id.*

Contrary to B&G's assertions (*see* D. Memo at 1-3),[1] the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) itself requires denial of the motion to dismiss. In *Twombly,* the Court, quoting from *Conley v. Gibson*, 355 U.S. 41,47 (1957), expressly affirmed the existing liberal pleading standard noting that "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 127 S. Ct. at 1964. The Court also instructed that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," that "'Rule 12(b)(6) does not countenance . . . dismissals based upon a judge's disbelief of a complaint's factual allegations,'" and that "a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* At 1964-65.

This reaffirmation of the traditional pleading rules has been applied by the Court of Appeals for the Second Circuit, which wrote: "the [Supreme] Court explicitly disclaimed that it was 'requir[ing] heightened fact pleading of specifics,'" and affirmed that "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Iqbal v. Hasty*, 490 F.3d 143, 156-157 (2d Cir. 2007), *cert. granted sub. nom, Ashcroft v. Iqbal*, ___S. Ct. ___, 2008 WL 336310 (U.S. June 16, 2008). Indeed, the *Iqbal* court expressly noted that "we believe the Court *is not requiring a universal standard of heightened fact pleading.*" *Id.* at 157 (emphasis

---

[1]      Citations to Defendants' Memorandum of Law in Support of their Motion to Dismiss Claims Pursuant to Rules 9(b) and 12(b)(6) are in the form "D. Memo" and page references.

added).  At most, the Second Circuit said, *Twombly* was implementing a "flexible

'plausibility standard,'" which obliges a plaintiff to amplify a claim with some factual

allegations in certain contexts, such as antitrust, "where such amplification is needed to

render the claim plausible." *Id.* at 158.

Indeed, the Supreme Court, post-*Twombly* again quoted from *Conley*, the

seminal liberal pleading case, reversing the Tenth's Circuit's dismissal of a compliant on

the ground that it was "conclusory." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197

(2007).

In sum, contrary to B&G's assertion, *Twombly* did not heighten the

pleading standard applicable in this case.  As demonstrated below, for each and every

claim in the Complaint, AKO meets the applicable pleading standards and therefore the

motion should be denied.

## II.    THE COMPLAINT PROPERLY PLEADS THAT BRAY & GILLESPIE'S CONDUCT CONSTITUTES FRAUD

In its motion to dismiss the fraud count, B&G argues: (1) AKO failed to

identify who made the fraudulent statements;  (2) AKO failed to aver fraudulent intent

with adequate specificity; and (3) the claim is barred by the economic loss rule.  Def.

Br. at 3-5.  For the reasons set forth below, the Court should reject these arguments.

B&G's motion to dismiss the cause of action for fraudulent inducement is

predicated upon a distortion of the claim set forth in the Complaint.  D. Memo at 3-8.

AKO's position is that it is entitled to recovery on the basis of one of two scenarios.

Under the first, Defendants breached a valid and enforceable contract through their

failure to pay the fees that they were contractually obligated to pay, a contract that was

in effect until Defendants fired plaintiff.  Comp. ¶¶ 29-33.  Alternatively, AKO alleges that

in September of 2007, more than a year after AKO started representing B&G, B&G had fallen so far behind in its fee payments that AKO felt its compensation was in jeopardy.

By August 31, 2007, the outstanding balance owed for time charges and disbursements was $658,272.24.  *See* Lane Dec. ¶ 27, and Exhibit D thereto, detailing the running balances owed by B&G throughout the period of the engagement.  In September of 2007, specifically at the request of Mr. Bray relayed through B&G's General Counsel, Harold Lueken, AKO agreed to defer $300,000 then due until February 28, 2008, on the condition that all other fees then due, and to become due for future work, be paid in the ordinary course (which was approximately 60 days after billing), and that the deferred amount would be paid on the agreed date. Lane Dec. ¶ 25.  AKO alleges that the promise to pay in the ordinary course, and the promise to pay the deferred amount at the end of February, were made fraudulently and without any present intention to carry out the promises.  Based upon these promises, AKO not only deferred the $300,000 but undertook very substantial additional legal work on behalf of B&G based on its belief in the veracity of B&G's representation when it was made.  Comp. ¶¶ 34-44

## A.   The Complaint Alleges Fraud with Sufficient Particularity

### 1.   The Pleading Standard

In pleading allegations of fraud, a party must state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements are fraudulent. *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

2.    <u>The Complaint Clearly Identifies The Speaker</u>
      <u>Of The Fraudulent Statement</u>

AKO has identified who made the fraudulent statement with sufficient particularity. Here, the Complaint clearly identifies communications that constitute the fraud which arise from specific communications between B&G and AKO, initiated by B&G. Comp. ¶ 23. What is lacking, alleges B&G, is the identities of the communicators.

As set forth above, B&G specifically requested that AKO defer payment of $300,000 of outstanding fees. *See generally* Lueken Dec. ¶¶ 20-23; Lane Dec. ¶¶ 25-30. That request came from Mr. Bray, and was related to Mr. Lane by Mr. Lueken, then of B&G by telephone. Lane Dec. ¶ 28. After checking with AKO's Executive Committee, Mr. Lane then responded to Mr. Lueken by email dated September 28, 2007 that AKO had agreed to defer payment of $300,000 in its effort to assist B&G through its seasonal business. Lane Dec. ¶¶ 25-30. Mr. Lueken told Mr. Bray of AKO's agreement to that arrangement. *Id.* B&G also confirmed its agreement to pay all outstanding balances within no more than 60 days. Lane Dec. ¶ 29. Mr. Lueken responded in an email dated September 30, 2007. In it he expressed Mr. Bray's and B&G's gratitude for this accommodation. Lane Dec. ¶ 30.

Because AKO has identified the communicants in the Lueken and Lane declarations filed herewith, no purpose would be served by requiring repleading, which is the inevitable remedy. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986), holding that complaints dismissed under Rule 9(b) are "almost always" dismissed with leave to

amend, the exception being those cases in which plaintiffs have already had additional opportunities to plead with greater specificity; *see also Wright and Miller,* 5A Fed. Prac. & Proc. Civ.3d § 1291.  Failure to grant leave to amend following dismissal on Rule 9(b) grounds is an abuse of discretion warranting reversal. *Caputo v. Pfizer,* Inc., 267 F.3d 181, 191 (2d Cir. 2001); *Luce,* 802 F.2d at 56.

Since it is unquestionable that repleading is an available remedy, in the interest of judicial economy the additional factual specifications contained in the Lane and Leuken Declarations should be considered as if they were incorporated by reference in the complaint itself.   As such, the specifications would be read as if they were contained verbatim in the complaint, and under any standard the rules of particularity would be complied with.  See *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-153 (2d Cir. 2002), in which the court considered affidavits submitted in opposition to a 12(b)(6) motion as if it were considering opposition to a motion for summary judgment.

The specificity in the AKO complaint as supplemented by the Lueken and Lane declarations more than meets the pleading requirements set forth in B&G's cases. Defendants cite *Mills v. Polar Molecular Co.,* 12 F. 3d 1170 (2d. Cir. 1993) for the unexceptionable proposition that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to defendants generally."  D. Memo at 4. That simply is not the case here.  Moreover, *Mills* was not followed in *U.S. v. $15,270,885.69 On Deposit In Account No. 8900261137,* No. 99 Civ. 10255, 2000 WL 1234593, *6 (S.D.N.Y. Aug. 31, 2000), where the court held that citing defendants without specifically stating their identities would have survived challenge because the

correspondence featuring the fraud was provided by the CEO of the defendant. *Id.* The same is true here. The exchange of emails which establish the deferral, the promise to pay all other charges, and plaintiff's reliance thereon are the basis of the fraud – a fraud which was outlined in the Complaint.

3.      The Complaint Adequately Alleges B&G's
        Fraudulent Intent

Defendants' suggestion that plaintiff's allegation of fraudulent intent is inadequate because it is made on information and belief is mystifying. Even Defendants agree, D. Memo at 5, that allegations of fraud can be based "upon information and belief" with regard to "matters peculiarly within the opposing party's knowledge." *Luce v. Edelstein, Supra* at 54, n.1. Satisfying Rule 9(b) in such instances simply requires a statement of facts upon which the belief is founded. In *Luce*, the Second Circuit found fault with the sections of the complaint that alleged misrepresentations without specifying the content, context, or amount. *Id.* at 54. However, the Court found that the other allegations in the complaint met the particularity requirement, including a reference to an Offering Memorandum, which served as the basis for the misrepresentation allegation. *Id.* at 55.

The fraud count of AKO's Complaint, ¶¶ 34-44, falls squarely within the standards outlined in *Luce* in its clear articulation of the specific instance of fraudulent inducement including the time, place, and manner of the fraud. Specifically, akin to the Offering Memorandum in *Luce*, the Complaint refers to the agreement of September 2007, memorialized in the email exchange noted above between AKO and B&G, in which AKO granted B&G's request for a five month deferral until the end of B&G's "slow season" for the business. As required by *Luce*, the Complaint quantifies the specific

amount ($300,000) as well as the specific statement made (defer payment until after their "slow season" – i.e. a specific date February 28, 2008).

Under Rule 9(b) of the Federal Rules of Civil Procedure, claims of fraud must be "stated with particularity," but fraudulent intent "may be averred generally." Fed. R. Civ. P. 9(b).  B&G's fraudulent intent can be inferred from their failure to fulfill their promises, even after being informed of this failure.  *See Gourdine v. Cabrini Med. Ctr.*, 128 F. App'x 2d 780, 782 (2d Cir. 2005) (holding that surgery resident at a hospital who later found out hospital would not be providing her with a residency certificate presented inference of fraudulent intent); *Turkish v. Kasenetz*, 27 F.3d 23, 28 (2d Cir. 1994) (motive to avoid financial obligations sufficient to suggest inference of fraudulent intent).  A plaintiff's claim of fraudulent inducement can be sustained without reference to direct evidence of fraudulent intent if the plaintiff pleads and provides evidence of facts that support a "strong inference that the defendants possessed the requisite fraudulent intent."  *Cosmas v. Hassett*, 886 F.2d 8, 12-13 (2d Cir.1989).  This can be accomplished by a showing of a motive for committing fraud or by "identifying ... conscious behavior by the [accused party]."  *Enzo Biochem, Inc. v. Johnson & Johnson*, No. 87 Civ. 6125 (KMW), 1992 WL 309613, *11 (S.D.N.Y. Oct. 15, 1992).  In fact, fraudulent intent "is rarely susceptible to direct proof and must ordinarily be established by circumstantial evidence and the legitimate inference arising therefrom."  *Id. See also Gourdine, supra,* at 38.

B&G's behavior raises a strong inference of fraudulent intent.  The simple fact that B&G asked for an agreement to defer payment of $300,000 and then allowed AKO to continue working through the five-month deferment period to February 28, 2008

before firing AKO the next month, provides a strong inference of fraudulent intent -- that B&G sought expert legal services but did not intend to pay for them.  Plaintiff has alleged that there is evidence that this is not the first time B&G has engaged in such fraudulent behavior with a law firm or vendor, Comp. ¶ 42(a).

*Johnson & Johnson*, 1992 WL 309613, at *12, cited in D. Memo at 6, provides further support on this point.  There the court, analyzing the specific facts as alleged, found that sufficient evidence of fraudulent intent was presented so as to survive even summary judgment, not just a motion to dismiss.  Although the court in *Johnson* held that mere nonperformance of promises will not raise the inference of fraud,  the examples cited in the case refer to the completion of <u>specific</u> promises within the general scheme of a contract.  In other words, the promise to develop pharmaceuticals was determined not to have been met because the level of resources committed to the projects were below what they should have been to be effective.  *Id.* Here, AKO fulfilled the entirety of its obligation, and its promises, and B&G failed to uphold its entire contractual obligation.  That B&G requested and received from AKO the September 2007 agreement and failed to even partially perform that obligation, creates an even stronger inference of fraudulent intent than that which was deemed to require trial in *Johnson*.

        4.      <u>The "Economic Loss Rule" is Irrelevant at the Pleading Stage of this Case</u>

B&G cites the economic loss rule as a ground for purported dismissal. D. Memo at 6-8.  At best, this reflects a misreading of the Complaint.

The economic loss rule prevents recovery for tortious behavior within a contractual relationship where the damages that are proven are recoverable as a

consequence of the breach. This is the teaching of defendants' cases. But this is not AKO's claim.

As stated in the introductory portion of this Point, AKO alleges, as an alternative to its contract-based claims, that it was fraudulently induced into providing services, and into modifying the payment terms of the contract by deferring the due date of $300,000 already owed. The damages incurred due to the fraudulent inducement, after B&G breached its contractual obligations, are measured by the reasonable value of services provided, which, plaintiff contends, equates to AKO's normal hourly billing rates.

Plaintiff agrees with Defendants that under both New York and Florida law, one cannot recover on both contractual and tort bases for the same economic injury. But the argument is not presently relevant. If the trier of fact concludes that the original contract was breached, but that plaintiffs were fraudulently induced into continuing to perform legal services for B&G and into deferring an already due payment, then the value of that fraudulently induced work, and the additional damages caused by the deferral of receipt of money already earned, are recoverable in tort. As such, although the value of the fraudulently induced services may well be the same as what would have been due contractually absent B&G's breach in meeting its payment obligation, the measure of damages is provided by tort law, which includes exemplary damages.

III.    **THE COMPLAINT PROPERLY ALLEGES THAT BRAY & GILLESPIE, INC. AND BRAY & GILLESPIE MANAGEMENT, LLC WERE USED TO PERPETUATE A FRAUD**

The Complaint properly alleges liability against Mr. Bray, Mr. Gillespie, and two corporate entities owned or controlled by them.[2]    In addition, there are numerous other B&G entities through which Mr. Bray and Mr. Gillespie manage their hotel empire, as evidenced by the payment of AKO's bills – when they were being paid – by a dozen or so of B&G operating entities.  Lane Dec. ¶ 46.  While these other entities are not sued individually, the interlocking relations between all of the B&G entities and the use of the financial resources of each for the needs of the others, are significant indicators that Mr. Gray, Mr. Gillespie, and all of their entities are legally liable for all the derelictions alleged in the Complaint.

AKO contends that all of the B&G's entities are alter egos of Mr. Bray and Mr. Gillespie, and were used to commit a fraud against AKO.  Under either Florida or New York law, the requisite facts necessary to state the claim are present.  As alleged in the Complaint: (a) at all relevant times B&G and its related entities were devoid of corporate and other organizational formalities; (b) at all relevant times the B&G entities were inadequately capitalized; (c) at all relevant times the B&G entities' funds and revenues were used for Messrs. Bray's and Gillespie's personal purposes rather than corporate purposes; and (d) at all relevant times Messrs. Bray and Gillespie made all of the corporate and organizational decisions for the B&G entities, which had no independent corporate or organizational discretion.  Comp. ¶ 47.  Further, AKO acted

---

[2]    Defendants admit that Mr. Bray and Mr. Gillespie own all the B&G corporate entities.  Nalley Dec. ¶¶ 6–11.

as a creditor to B&G, by deferring $300,000 in fees, an action tantamount to providing B&G a loan.  *See* Comp. ¶ 58.

There are some differences between the standard for piercing the corporate veil under the New York and Florida formulations of the doctrine:

> "To pierce the veil in New York, a plaintiff must show ' (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'  To pierce the corporate veil under Florida law, a plaintiff must show that that corporation is a mere instrumentality or alter ego of the defendant and that the defendant engaged in 'improper conduct'." (citations omitted)

*Network Enter., Inc., v. APBA Offshore Prods., Inc.*, 264 F. App'x 36, 40 (2d Cir. 2008) (summary order).

In *APBA Offshore,* the court did not reach the question of whether a conflict of law existed because piercing the veil was warranted under either standard.[3] The same point is true here since AKO's pleading is adequate under either formulation, there is no need for this Court, at this time, to make a choice of law determination.

*APBA Offshore* outlines clear factual benchmarks for successfully piercing the corporate veil under either New York or Florida law.  In *APBA Offshore*, the two parties entered a contract by which a cable television network bestowed certain rights upon a corporate purchaser of network time, including a special renewal option.  *APBA Offshore*, 264 F. App'x at 38.  The special renewal option offered the parties a framework for additional negotiations in the event that a new agreement was not

---

[3]      Incredibly, B&G states that *APBA Offshore* held that "veil piercing was **not** warranted under either standard."  D. Memo at 9. (emphasis added)

reached when the original agreement expired. *Id.* When the agreement expired, having been led to believe that the two sides were close to a deal, the network set aside time for the corporate purchaser. *Id.* at 39. The corporate purchaser then walked away from the deal at the last minute, at which point it became impossible for the network to find a replacement. *Id.* The Second Circuit found the owner of the corporate purchaser to be personally liable because he:

> (1) formed the company; (2) at all times served as its sole owner and member; (3) conducted all of its business, including maintaining the corporate bank account, signing the TBA, exercising the renewal option, and causing the company to cease negotiations under the ROR; and (4) operated the company from the same address where he maintained his law practice. Furthermore, [he] removed money from the [Company's] account and left the company insolvent before he caused it to sign the TBA and exercise the renewal option under the ROR." *Id.* at 40.

The *APBA Offshore* court went on to conclude that the "sufficiently wrongful conduct to warrant corporate disregard" included the deceptive action of undertaking an obligation which the defendant did not intend to discharge. *Id.* Further, given their past contractual relations, the network had every reason to believe that the defendant was willing and able to perform its obligation. *Id.* As applied to the facts at hand, B&G's failure to perform its obligation, after over one-year of paying its bills, illustrates that piercing the veil is also warranted in this instance.

B&G's motion cites *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla. 1984), and its progeny,[4] for the proposition that mere ownership of a corporation

---

[4]    *Johnson Enters of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290 (11th Cir. 1998); *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir. 1986); *Government of Aruba v. Sanchez*, 216 F.Supp.2d 1320, (S.D.Fla. 2002); *Resolution Trust Corp. v. Latham & Watkins*, 909 F. Supp. 923, 931 (S.D.N.Y. 1995); *Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So.2d 1141 (Fla. Dist. Ct. App. 1995).

by a few shareholders is an insufficient reason to pierce the corporate veil. D. Memo at 9. That is true, but irrelevant, for that is not the basis of plaintiff's pleading. The Complaint does not assert that the mere size of the corporation requires this Court to pierce the corporate veil. Rather, the Complaint clearly offers four ways in which B&G's entities serve as an alter ego for Messrs Bray and Gillespie. *See* Comp. ¶ 47. The fact remains, however, that the B&G business entities are for the most part for the benefit of Messrs Bray & Gillespie. In addition, AKO represented some dozen B&G entities in no fewer than five matters, and it appears from the payment checks that B&G made some internal allocation amongst the B&G entities which may be based on available cash rather than any otherwise defensible apportionment -- an issue to be determined during discovery. Lane Dec. ¶ 46. B&G's improper conduct and failure to perform its obligations under the contract merits piercing the veil.

B&G also cites *Sykes* and the cases that follow it for the proposition that the "corporate veil may not be pierced absent a showing of improper conduct." *Sykes*, 450 So.2d 1114, 1121 (Fla. 1984). But as the *Sykes* opinion makes clear, "improper conduct" is an expansive term which encapsulates illegal conduct, improper actions on the part of members of the corporation, and even the avoidance of obligations. *Sykes*, 450 So.2d at 118, citing treatise that veil is pierced when entity is employed to defraud creditors, circumvent statutes, achieve or perpetuate monopolies, or protect knavery or crime. Thus, B&G's framing of Florida's view of improper conduct is misleadingly narrow.[5]

---

[5]   B&G also cites *Resolution Trust Corp. v. Latham & Watkins*, 909 F. Supp. 923, 931 (S.D.N.Y. 1995), for the proposition that intentionally fraudulent conduct is necessary to pierce the corporate veil

*(footnote continued)*

Even if improper conduct was limited to that involving creditors, however, B&G's entities, as debtors of AKO, were used to perpetuate a fraud. See D. Memo at 10. (again following *Sykes*). Specifically, at the time that the deferment was granted, B&G's entities owed AKO in excess of $600,000. Lane Dec. ¶ 27. AKO granted B&G a deferment of five months to pay $300,000 those fees. B&G never paid AKO the $300,000 deferred payment. B&G also did not pay fees for work performed during the five months deferment period that B&G fraudulently induced AKO to work. *See* Comp. ¶ 25. Given its obligation to pay the remaining monies to AKO, B&G's entities assumed the role of debtors. *See* Comp. ¶ 58. Thus, even if inadequate capitalization, a lack of corporate formalities, and commingling of funds are not actionable other than as to misled creditors, AKO alleges that it was such, which is all that is required even under B&G's cramped reading of the case law.

B&G contends that under New York law, no cause of action is recognized for piercing a corporate veil. D. Memo at 11. Although true, this argument is misleading here. The "attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Morris v. New York State Dept. of Taxation and Finance*, 623 N.E. 2d 1157, 1160 (N.Y. 1993). But while there is no separate cause of action for piercing the corporate veil, allegations regarding the need to pierce may be properly

---

under Florida law. Under the *Sykes* line of cases, this proposition is overly broad. In any event, as discussed in the previous section, fraudulent conduct is adequately pleaded, and thus presents an issue of material fact that will need to be resolved at trial. *See, supra*. Part II.

pleaded in the complaint or given leave to amend.  *Fiber Consultants, Inc. v. Fiber Optek Interconnect Corp.,* 792 N.Y.S. 2d 89, 91 (App. Div. 2d Dep't 2005); *9 E. 38th Assoc., L.P. v. George Feher Assoc., Inc.,* 640 N.Y.S. 2d 520, 521 (App. Div. 1st Dep't 1996) (finding sufficient evidence in determining personal liability for corporate defendant when "[d]efendant, as sole shareholder, is alleged to have exercised complete dominion and control over the corporation and to have fraudulently conveyed corporate assets to avoid the corporation's obligations under the lease."). Here, AKO properly pleaded the necessary facts and circumstances so as to establish that piercing the veil is warranted.[6]

In sum, the Complaint properly alleges numerous grounds for a finding that Bray & Gillespie, Inc. and Bray & Gillespie Management, LLC were used to perpetuate a fraud.  This court should not now dismiss AKO's piercing of the corporate veil claim.

## IV.    THE COMPLAINT PROPERLY STATES A CAUSE OF ACTION FOR AN ACCOUNT STATED

Defendants argue that AKO has failed to plead properly a cause of action for an account stated.  D. Memo at 12-14.  In doing so, Defendants mischaracterize AKO's pleading of this cause of action by saying that AKO's claim is "based solely upon the assertion that it sent invoices for legal services to Bray & Gillespie, and that Bray and Gillespie allegedly failed to object to these invoices."  D. Memo at 12.  Defendants urge, without any legal support, that AKO must plead an agreement as to the amount

---

[6]    Plaintiff concedes that it has only circumstantial information at present regarding the B&G entities, and that discovery will be required to ascertain whether there are adequate facts to view some or all of the entities as alter egos of each other, or of Mr. Bray and/or Mr. Gillespie.  But, of course, that is a consideration at the summary judgment stage, not on a motion to dismiss.

owed.  Defendants state that AKO's allegations that Defendants may have examined

invoices and did not contest them is "meaningless."  *Id.*

Under both New York and Florida law, Defendants' argument completely

lacks merit.

> Under New York law,  "[a]n account stated exists where a party to a
> contract receives bills or invoices and does not protest within a
> reasonable time."

*Transportation Ins. Co. v. Star Indus., Inc.,* No. CV01-1341 (ARL), 2005 WL 1801671, at

*9 (E.D.N.Y July 28, 2005) quoting from  *Bartning v. Bartning*, 791 N.Y.S. 2d 541, (App.

Div. 1st Dep't 2005).

Specifically, the common law elements of a claim for an account stated

are (1) the existence of a debtor-creditor relationship; (2) mutual examination of the

claims of the respective parties; (3) the striking of a balance; and (4) an agreement,

express or implied, that the party against whom the balance is struck will pay the debt.

*Reisman, Peirez & Reisman, L.L.P. v. Gazzara*, 839 N.Y.S 2d 436 (Sup. Ct. 2007).  The

rationale for permitting a recovery on an account stated theory is that the parties have,

by their conduct, evidenced an agreement upon the balance of an indebtedness. *Id.*

Among the circumstances to be considered is whether an objection has been made to

the account within a reasonable time.  *Id.*

Florida law is no different.  In *In re Gulf Northern Transport, Inc.*, 340 B.R.

111, 123 (Bankr. M.D. Fla. 2006), cited by the Defendants, an account stated is

> an agreement between persons who have had previous
> transactions, fixing the amount due in respect to such transactions
> and promising payment.  A plaintiff may prove a prima facie case
> for account stated by proffering evidence that the account was

rendered under circumstances which raise a presumption of assent.  For an account stated to exist there must be an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this balance.  The practice of periodic billing in the regular course of dealing may establish an account stated if no objection to the amount of the bill is made within a reasonable time.  (citation omitted)

The cases relied on by Defendants, D. Memo at 12-13, actually support plaintiff.  They stand for the proposition that there must be an agreement between parties with regard to the appropriate balance in order to create an account stated.  In both *Mercado v. Lion's Enter., Inc.*, 800 So.2d 753 (Fla. Dist. Ct. App. 2001) and *Carpenter Contractors of Am., Inc. v. Fastener Corp of Am., Inc.*, 611 So.2d 564 (Fla. Dist. Ct. App. 1992), the parties alleging claims of an account stated did not produce any evidence that the parties agreed on the balance.  Here, on the contrary, there was regular, periodic billing for legal services.  The Retainer Agreement dated May 30, 2006, makes the manner of payment and billing quite clear as it states that "[AKO] will bill you on a monthly basis for time charges and disbursements, and you agree to pay those bills promptly." Prior to the end of 2007, following the Retainer Agreement, monthly invoices were regularly received and paid.

Of course, if the elements of an account stated do not exist the claim fails.  But Defendants' cases so holding simply do not match the facts of the present action.  Thus, where a  bankrupt debtor could not prove that an agreement to provide transportation services, for which he was attempting to collect, had ever been agreed upon, a claim on an account stated was found unproven.  *In re Gulf Northern Transport, Inc.*, 340 B.R. at 123.  Defendants' other cases are equally inapplicable:  *Erdman Anthony & Assoc., Inc. v. Barkstrom,* 747 N.Y.S.2d 670 (App. Div. 4th Dep't 2002) (holding evidence of *repeated oral disputes* of agreement to pay fees on an *hourly basis*

sufficient to overcome summary judgment); *Marcus Borg Rosenberg & Diamond v.*

*Gilbert, Segall & Young*, 670 N.Y.S.2d 73 (App. Div. 1st Dep't 1998) (finding that

complaints about law firm representation and the fact that no accounts stated claim was

made with regard *to many of its invoices* is sufficient to defeat motion for summary

judgment); *Sisters of Charity Hosp. of Buffalo v. Riley*, 661 N.Y.S.2d 352, 359 (App. Div.

4th Dep't 1997) (rejecting accounts stated when *plaintiffs' own account statements*

*differed in amount owed* and there was *no evidence that statements were even sent to*

*defendant*) (emphasis added).

In fact, *Barkstrom*, the principal case relied on by Defendants, could not

be further from this case, as there the dispute involved numerous oral objections to

hourly billing, since the defendants "wanted to be billed in accordance with the

customary practice of the construction industry, i.e., as various phases of the project

were completed." *Barkstrom*, 747 N.Y.S.2d at 671.  Here, on the contrary, a Retainer

Agreement exists which specifies the manner of monthly billing and payment, there

were regular payments following the payment mechanism outlined in the Retainer

Agreement, and Defendants to date still have offered no specific objections to these

bills.  Because Defendants have had sufficient notice and opportunity to contest the bills

as presented, and have not done so, not only is the claim on an account stated properly

pleaded, it is incontestable.

---

[8]     Contrast the instant case with *Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154, 1160 (S.D.N.Y. 1988), relied on by Defendants, D. Memo at 15.  In *Mellancamp,* a non-signatory to a contract was dismissed where the only relevant factual allegation was that the non-party shared the same director or owner as the signatory.  In the present case, AKO alleges, and Defendants' former General Counsel concur, much of the legal representation was specifically on behalf of non-signatories, and inured to their benefit.  Lueken Dec. ¶ 8.

V.    **THE BREACH OF CONTRACT, *QUANTUM MERUIT*, AND
      ACCOUNT STATED CLAIMS WERE PROPERLY PLEADED
      AGAINST BRAY & GILLESPIE, INC. AND MESSRS. BRAY AND
      GILLESPIE BECAUSE THEY WERE PARTIES TO THE
      RETAINER AGREEMENT AND RECEIVED MATERIAL
      BENEFITS FROM AKO'S PERFORMANCE OF SERVICES
      UNDER THE AGREEMENT**

B&G asserts that Bray & Gillespie, Inc and Messrs. Bray and Gillespie individually were not parties to the Retainer Agreement and thus the claims against them should be dismissed.  D. Memo at 14.  As argued in Point III above, any resolution of this claim must await litigation of the veil-piercing arguments.

In addition, however, AKO alleges that all of the B&G entities, and Mr. Bray and Mr. Gillespie as the owners of those entities, were the intended and contemplated beneficiaries of the agreement to have AKO provide legal services in connection with insurance and insurance-related litigation.  In light of Mr. Lueken's declaration, extensively referred to earlier in this memorandum of law, the scope of contemplated legal services, and the precise persons or entities which were to be the recipients and beneficiaries of those services, cannot be determined by mechanical reference to the Retainer Agreement signed by Mr. Lane and Mr. Lueken.[8]  As Defendants' own Florida cases recognize, a non-signatory may sue or be sued on a contract in two situations beyond that of veil-piercing;  (1) if the non-signatory is, personally or as a class member, the clearly designated third-party beneficiary of the contract, or (2) if the benefit the non-signatory receives is more than incidental or happenstantial.  If a non-party to a contract receives a direct benefit, a claim is stated. *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 279 (Fla. 1985) (*cited* in *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400 (Fla. Dist. Ct. App. 2004).

Defendants further allege that the Complaint fails to stated claim for *quantum meruit* against Mr. Bray, Mr. Gillespie, and Bray & Gillespie Inc. But as Defendants recognize, see cases at D. Memo at 16, if a direct benefit has been conferred, then the claim stands as pleaded. Here, AKO provided legal services to various B&G entities, and the benefits were, AKO alleges, accepted by all of those entities. At this early stage of the litigation, it is impossible to know to what extent Mr. Bray and Mr. Gillespie benefited directly -- as opposed to benefiting in their alter ego guises -- from the litigations in which their interests were so intimately involved. As with the veil-piercing arguments, dismissal prior to investigation and discovery is premature.

## CONCLUSION

Based on the foregoing, AKO submits that this Court should deny Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) in its entirety.

Dated:    New York, New York          ANDERSON KILL & OLICK, P.C.
          July 1, 2008

                                      By:    /S/ JEFFREY E. GLEN
                                             Jeffrey E. Glen, Esq. (JG-8277)

                                             1251 Avenue of the Americas
                                             New York, NY  10020
                                             Telephone:  212-278-1000
                                             Facsimile:  212-278-1733

                                             Attorneys for Plaintiff