UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDERSON KILL & OLICK, P.C.,<br><br>                        Plaintiff,<br><br>- against -<br><br>BRAY & GILLESPIE, INC.; BRAY & GILLESPIE MANAGEMENT, LLC; CHARLES A. BRAY and JOSEPH GILLESPIE,<br><br>                        Defendants. | Index No.: 1:08-cv-4565 (AKH) (RLE)<br><br>Electronically Filed<br><br>**DECLARATION OF MAYA CATER** |

      1.      I was employed by defendant Bray & Gillespie, Inc. d/b/a Ocean Resorts, Inc. (together with the other defendants referred to herein collectively as "Defendants" or "B&G"). I make this declaration at the request of Plaintiff, Anderson Kill & Olick, P.C. ("AKO").

      2.      I was employed by B&G from February 6, 2006 to April 15, 2008 as Executive Associate.

      3.      During much of my time at B&G, commencing in approximately May 2006, I worked with Harold Lueken ("Lueken") and assisted him with coordinating the legal work that AKO was doing on B&G's behalf.

      4.      At all times during AKO's retention of B&G, Mr. Lane was the attorney heading up the work AKO was doing for B&G. Mr. Lane established a team of lawyers and other personnel to complete the legal work B&G sent to AKO. One of the members of the team was John Ellison, an insurance law expert, who provided important strategy on the insurance coverage litigations. However, at all times, it was Mr. Lane who was responsible for the day-to-day operation of the AKO team working for B&G.

5.  During the course of my work, I called and emailed Michael J. Lane ("Lane") at AKO's headquarters in New York at least an average of several times a week. As my work progressed, those telephone calls and emails became more frequent, by which I regularly contacted Mr. Lane in New York (on many days more than once), including evenings and weekends.

### My Travel to New York

6.  As part of B&G's efforts to raise capital, I traveled to AKO's office in New York to have a meeting with Mr. Lane, Mr. Ellison, and Richard Fields, who was associated with a company known as Juridica, from which B&G was seeking financing. My best recollection is that this meeting took place in January 2008. The meeting took place in a conference room in AKO's New York office.

7.  At that time, I also met with Finley Harckham, another insurance law expert at AKO. It was during this time that AKO was going through a major change in personnel, with many attorneys moving to Reed Smith. Mr. Ellison chose to go to Reed Smith. Mr. Lane decided to stay at AKO.

8.  At that time, Mr. Lane suggested to Mr. Lueken that we continue to use Mr. Ellison even though he was going to Reed Smith. Mr. Lueken was not sure at that time whether Mr. Bray would agree to have both AKO and Reed Smith work on B&G's matters at the same time. Mr. Lane had suggested that in the event Mr. Bray did not want to continue with Mr. Ellison working on B&G matters when he went to Reed Smith, AKO had another senior lawyer, Finley Harckham, who had similar insurance expertise.

9. I met with Mr. Harckham, Mr. Lane, and Michael DiCanio (then an AKO associate who worked on B&G matters in the New York office and, upon information and belief, continues to work on B&G matters today in Reed Smith's New York office) at AKO's office in New York. We subsequently had dinner together in the restaurant that is on the ground floor of their building at 1251 Avenue of the Americas.

10. I again traveled to New York in February 2008 to meet with Mr. Lane and several of his AKO colleagues who were going to work on B&G's legal matters going forward. These attorneys were Joshua Gold, Stanley Bowker, and Cort Malone. That meeting took place in AKO's New York offices.

11. As part of my work for Mr. Lueken, at various times he had me review the AKO bills. The process for paying the AKO bills was that such bills were reviewed, and once Mr. Lueken approved them, they were sent to Accounting. Accounting would process the bills for payment and produce a paper check(s) ready for signature. These checks would be presented to Mr. Stephen Nalley, Senior Vice President, for signature.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Hackensack, New Jersey on June 27, 2008.

*[signature]*
MAYA CATER

NYDOCS1-894645.4