UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDERSON KILL & OLICK, P.C.,

        Plaintiff,

- against -

BRAY & GILLESPIE, INC.; BRAY & GILLESPIE MANAGEMENT, LLC; CHARLES A. BRAY and JOSEPH GILLESPIE,

        Defendants.

---

Index No.: 1:08-cv-4565 (AKH) (RLE)

Electronically Filed

**DECLARATION OF FINLEY T. HARCKHAM**

---

1. I am attorney licensed to practice before this Court. I am a shareholder and a member of the Executive Committee of Plaintiff Anderson Kill & Olick, P.C. ("AKO"). I make this declaration on personal knowledge (1) in opposition to defendants' (collectively, "Defendants" or "B&G") motion to dismiss the complaint because of lack of personal jurisdiction and improper venue, or in the alternative, to transfer this case to the Middle District of Florida; (2) in opposition to defendants' motion to dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(a); and (3) in support of AKO's cross-motion for partial summary judgment, awarding AKO a judgment in an amount of at least $857,138.88, plus interest. This Declaration is accompanied by declarations of (1) Harold W. Lueken ("Lueken"), former General Counsel, Executive Vice President and Chief Operating Officer of B&G; (2) Maya Cater, a former B&G employee; and (3) my partner, Michael J. Lane ("Lane"), who was the attorney principally responsible for the work that AKO did for B&G.

## Summary of AKO's Cross-Motion For Partial Summary Judgment

2.  In its cross-motion, AKO seeks immediate payment of $857,138.88, plus interest, in accrued legal fees and disbursements that were billed to B&G during calendar year 2007[1], and which were reviewed and approved for payment by Mr. Lueken. As demonstrated in the Lueken Declaration, Mr. Lueken approved these bills and authorized the payment. B&G has made no objections to these bills. As described in the accompanying memorandum of law, the amount sought by this motion is indisputably owed under the legal doctrine of account stated. Even if the Court grants this motion, approximately $1.2 million in additional fees and disbursements will remain outstanding.

3.  Additional relevant facts are set forth in the accompanying Lueken, Lane, and Cater declarations.

4.  In May 2006, B&G retained AKO to represent it in a number of disputes arising out of hurricane damage to various B&G properties during the 2004 hurricane season. The amounts at issue in those actions exceed $120 million. In the 22 months AKO represented B&G, AKO billed a little more than $4 million. B&G paid about $2 million and owes about $2 million. During this representation, AKO successfully obtained a payment to B&G of $25 million (less deductibles) in August 2006.

---

[1] The last statements that are subject to AKO's cross-motion are dated December 31, 2007 were sent to B&G on January 3, 2008.

5.  The pace of the litigation accelerated in 2007. Because of this acceleration, AKO regularly generated six-figure bills. B&G generally paid the bills within 60 days, up until the second half of 2007.

6.  In addition, in January 2007, AKO Executive Committee approved a 10 percent discount in our fees. We have continued to honor this discount despite B&G not paying us.

7.  In addition, the billing partner, Mr. Lane, sought and received the approval of the Executive Committee to obtain other, significant pre-bill write offs. The total written off by AKO, including the 10 percent noted above, was at least $430,000.

8.  Effective February 1, 2008, a number of AKO attorneys joined the law firm Reed Smith LLP. The group that went to Reed Smith included three attorneys who had been working regularly on the B&G matters. Due to those departures, the billing of January time was not done until February 25, 2008. On that date, invoices for January time totaling approximately $435,000, and some $10,000 additional for January disbursements, were issued. These very substantial invoices included large amounts of time charges billed for the work of the attorneys who went to Reed Smith.

9.  After February 1, 2008, B&G continued to have AKO represent it on the matters that were in litigation. AKO restaffed the B&G cases with the agreement of Mr. Leuken, continuing Mr. Lane as lead counsel. Mr. Ellison, now with Reed Smith, continued to work on these matters. Counsel continued its work on the various matters, including completing discovery and beginning trial preparation for one matter, scheduled

for trial in late April. The February time was invoiced to B&G on March 24, 2008, totaling approximately $405,000.

10. On March 25, 2008, AKO, with local counsel, filed five substantial, dispositive motions in the case scheduled for trial in late April. Later that week, rather than pay these very substantial bills, B&G fired AKO. I understand that B&G then hired Reed Smith to assume these representations, and the very same lawyers who had represented B&G previously at AKO, including Mr. Ellison, took over as lead counsel on the B&G litigations.

11. The retention of Reed Smith and the continuation of virtually the same team of attorneys that had represented B&G previously confirm the quality of the work done before B&G's March 28, 2008 termination of AKO. Had B&G told AKO by February 1, 2008 that it had chosen to transfer its business to Reed Smith, an orderly transition could have occurred, and the very substantial bills for February work would have been incurred by Reed Smith rather than with AKO. But B&G left the representation with AKO, and then, having obtained the value of nearly two full months of AKO's work, not only fired AKO, but refused to pay any of the outstanding bills.

12. Despite B&G's refusal to pay its outstanding legal bills, AKO has provided B&G's new counsel with the files and representational materials, and has elected not to avail itself of the lien on its work product authorized by New York law. In addition, AKO has expended significant time and expenses to assist B&G and the Reed Smith firm in transitioning the representation in these matters.

13. Including the billing for work done February 1 to March 28, B&G now owes AKO approximately $2.06 million. Of that amount, $857,138.88, was submitted on or before January 3, 2008 and was approved by Mr. Lueken.

14. Since losing a substantial minority of attorneys, AKO now has approximately 70 attorneys. Having a receivable of over $2 million is a significant hardship on a firm of our present size.

15. AKO acknowledges that it is unusual to make a motion for summary judgment prior to issue being joined. Nonetheless, we believe that the financial exigencies caused by B&G's refusal to pay its bills because AKO has been through a substantial exodus of significant fee earners justifies the present motion.

16. It should also be noted that B&G elected to remove this action to Federal court, and in so doing brought itself within the ambit of Federal Rule of Civil Procedure 56(a), which states explicitly that a motion for summary judgment may be filed "at any time after 20 days have passed from commencement of the action." Contrast New York CPLR Rule 3212, which preludes a motion for summary judgment until "after issue has been joined."

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 30, 2008.

_____
FINLEY T. HARCKHAM